IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHILDCRAFT EDUCATION CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-461-GMS |
| ALICE'S HOME, WILLIAM WEDD AND ALICE WEDD, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY

MORRIS, NICHOLS, ARSHT & TUNNELL
S. Mark Hurd (#3297)
Jerry C. Harris (#4262)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
    Attorneys for Defendants

OF COUNSEL:

James P. Connors
Law Offices of James P. Connors
221 South High Street
Columbus, OH 43215

September 9, 2005

TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| NATURE AND STAGE OF THE PROCEEDING | 1 |
| SUMMARY OF ARGUMENT | 2 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 7 |
| I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE. | 7 |
| A. The Court Lacks Personal Jurisdiction Over Alice Wedd. | 7 |
| B. Because The License Agreement's Forum Selection Clause Is Unreasonable, Venue Is Improper As To Alice's Home And William Wedd. | 12 |
| II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. | 15 |
| A. Count One Fails To State A Claim Against Alice's Home And Mr. Wedd. | 16 |
| B. Count Two Fails To State A Claim Against The Defendants Under The Delaware Uniform Trade Secrets Act Because Delaware Law Is Not Applicable To The Claim. | 16 |
| C. The Court Lacks Personal Jurisdiction Over Ms. Wedd and Count Three Is Superceded by the Misappropriation of Trade Secrets Claim. | 17 |
| D. Count Four Fails To State A Claim And Is Superceded By The Misappropriation Of Trade Secrets Claim. | 19 |
| III. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULES 12(B)(7) AND 19. | 20 |
| A. Ms. Wedd Is A Necessary Party. | 20 |

TABLE OF CONTENTS (continued)

|  |  |  |  | Page |
|---|---|---|---|---|
| | B. | "In Equity and Good Conscience" This Action Should Not Proceed In The Absence of Ms. Wedd. | | 21 |
| IV. | | THE COURT SHOULD STAY THIS ACTION IN FAVOR OF A PRIOR-FILED ACTION PENDING IN STATE COURT IN OHIO. | | 24 |
| | A. | The Ohio Action and this Delaware Action are Parallel. | | 25 |
| | B. | Abstention is Warranted in This Case. | | 26 |
| | | 1. | Inconvenience of the Federal Forum | 27 |
| | | 2. | Avoidance of Piecemeal Litigation | 28 |
| | | 3. | Order In Which Jurisdiction Was Obtained | 29 |
| | | 4. | Presence of a *Res* or Property | 29 |
| | | 5. | Rule of Decision on the Merits | 29 |
| | | 6. | Adequacy of the State Court Proceeding to Protect Plaintiff's Rights | 30 |
| | | 7. | Identity of Issues | 30 |
| | | 8. | Federal Policy Militating in Favor or Against the Stay | 31 |
| | | 9. | Important Countervailing Federal Interest Which Federal Courts Are More Likely to Respect | 31 |
| CONCLUSION | | | | 32 |

TABLE OF CITATIONS

Page(s)

Cases

*Angst v. Royal MacCabees Life Ins. Co.*,
    77 F.3d 701 (3d Cir. 1996)                                    20

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
    772 F. Supp. 1458 (D. Del. 1991)                      9, 11, 12

*Brillhart v. Excess Ins. Co.*,
    316 U.S. 491 (1942)                                       28

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)                                     11

*Carnival Cruse Lines, Inc. v. Schute*,
    499 U.S. 585 (1991)                                     12

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
    709 F.2d 190 (3d Cir. 1983)                              13

*Colorado River Conservation Dist. v. United States*,
    424 U.S. 800 (1976)                                    passim

*Dentsply Int'l, Inc. v. Benton*,
    965 F. Supp. 574 (M.D. Pa. 1997)                    13

*Easds v. Woodsmen of the World Life Ins. Soc.*,
    785 P.2d 328 (Okla. App. 1989)                       15

*Eudaily v. Harmon*,
    420 A.2d 1175 (Del. 1980)                               9

*Fischer v. Hilton*,
    549 F. Supp. 389 (D. Del. 1982)                     9, 11

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
    539 A.2d 1060 (Del. 1988)                               19

*Gardiner v. Virgin Islands Water & Power Auth.*,
    145 F.3d 635 (3d Cir. 1998)                              22

*Gilbane Bldg. Co. v. Nemours Foundation*,
    568 F. Supp. 1085 (D. Del. 1983)               24, 27, 30

*Guenveur v. State Farm Mutual Ins. Co.*,
    551 F. Supp. 1044 (D. Del. 1982)               25, 26, 31

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)               27

*Harleysville Mut. Ins. Co. v. Grzbowski*,
    2002 WL 1859193 (Del. Super. Aug. 9, 2002)               25

*Harvey & Harvey v. Delaware Solid Waste Authority*,
    600 F. Supp. 1369 (D. Del. 1985)               24, 27

*ID Biomedical Corp. v. TM Technologies, Inc.*,
    1995 WL 130743 (Del. Ch. Mar. 16, 1995)               19

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)               11

*Jelich v. Warner Brothers, Inc.*,
    1996 WL 209973 (S.D.N.Y.)               15

*Jumara v. State Farm. Inc. Co.*,
    55 F.3d 873 (3d Cir. 1995)               13

*Jurimex Kommerz Transit GMBH v. Case Corp.*,
    201 F.R.D. 337 (D. Del. 2001)               21, 22, 23

*Kelly v. McKesson HBOC, Inc.*,
    2002 WL 88939 (Del. Super. Jan. 7, 2002)               8

*Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*,
    1997 WL 529587 (Del. Super. Jan. 29, 1997)               19

*Landis v. North American Co.*,
    299 U.S. 248 (1936)               24

*Little Switzerland, Inc. v. Destination Retail Holdings Corp.*,
    1999 WL 223496 (D. Del. Mar. 31, 1999)               20

*Maloney v. Gordon*,
    328 F. Supp. 2d 508 (D. Del. 2004)               24

*Mobilificio San Giacomo S.P.A. v. Stoffi*,
    1998 WL 125534 (D. Del. 1998)               13

*Moore v. Little Giant Indus., Inc.*,
    513 F. Supp. 1043 (D. Del. 1981),
    *aff'd*, 681 F.2d 807 (3d Cir. 1982)               9, 10

*Moses H. Cone Hospital v. Mercury Construction Corp,*
  460 U.S. 1 (1982)                                                            passim

*Nelson v. Master Lease Corp.,*
  759 F. Supp. 1397 (D. Minn. 1991)                                            15

*New Beckley Mining Corp. v. International Union, UMWA,*
  946 F.2d 1072 (4th Cir. 1991),
  *cert. denied*, 503 U.S. 971 (1992)                                          25, 26

*O'Neal v. Huxley Dev. Corp.,*
  558 F. Supp. 462 (D. Del. 1983)                                              9

*Pelleport Investors, Inc. v. Budco Quality Theaters, Inc.,*
  741 F.2d 273 (9th Cir. 1984)                                                 13

*Preferred Capital, Inc. v. Sarasota Kennel Club,*
  2005 WL 1799900 (N.D. Ohio July 27, 2005)                                    13

*Provident Tradesmens Bank & Trust Co. v. Patterson,*
  390 U.S. 102 (1968)                                                          23

*Pursuit Athletic Footwear, Inc. v. Save Power Ltd.,*
  1996 WL 328596 (D. Del. June 7, 1996)                                        1

*Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.,*
  42 F. Supp. 2d 423 (D. Del. 1999)                                            8, 16, 19

*Savor, Inc. v. FMR Corp.,*
  812 A.2d 894 (Del. 2002)                                                     18, 19

*Science Accessories Corp. v. Summagraphics Corp.,*
  425 A.2d 957 (Del. 1980)                                                     18

*Seal Colony Inc. v. Alcan Aluminum Corp.,*
  653 F. Supp. 1323 (D. Del. 1987)                                             24

*Simm Assocs., Inc. v. PNC Nat'l Bank,*
  1998 WL 961764 (Del. Super. Oct. 8, 1998)                                    13

*Telcordia Techs., Inc. v. Alcatel S.A.,*
  2005 WL 1268061 (D. Del. May 27, 2005)                                       7

*Tell v. Trustees of Dartmouth College,*
  145 F.3d 417 (1st Cir. 1998)                                               23

*The Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1 (1972)                                                            12

*U.S. v. Consolidated Rail Corp.*,
    674 F. Supp. 138 (D. Del. 1987)                                    9

*Weiper v. W.A. Hill Assoc.*,
    661 N.E.2d 796 (Ohio App. 1995)                                   19

*Wood v. Coastal States Gas Corp.*,
    401 A.2d 932 (Del. 1979)                                          19

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)                                               11

Rules

Federal Rule of Civil Procedure 12(b)(2)                              7

Federal Rule of Civil Procedure 19(a)                               20

Federal Rule of Civil Procedure 19(b)                               22

Statutes

10 *Del. C.* § 3104(c)(2)                                            10

10 *Del. C.* § 3104(c)(5) and (6)                                   10

6 *Del. C.* § 2003(a)                                               20

6 *Del. C.* § 2007(a)                                               18

6 *Del. C.* §§ 2001-09                                              17

*Del. C. Ann.* Tit. 20, § 2001                                     17

*Del. C. Ann.* tit. 10, § 3104                                      8

<u>NATURE AND STAGE OF THE PROCEEDING</u>

On May 16, 2005, Alice Wedd and Alice's Home commenced an action against Childcraft Education Corp. ("Plaintiff" or "Childcraft") and James Green in the Court of Common Pleas, in Franklin County, Ohio, asserting a variety of state law claims against the defendants in that action.[1]   Approximately six weeks later, on July 1, 2005, Childcraft commenced an action in this Court against Ms. Wedd, Alice's Home and William Wedd.   On August 30, 2005, plaintiffs in the Ohio action filed an amended complaint.[2]  Defendants have filed a motion to dismiss, or in the alternative, to stay this action.  This is Defendants' opening brief in support of that motion.

---

[1]     The Court may take judicial notice of the pleadings filed in the Ohio lawsuit, copies of which are attached as exhibits. *See Pursuit Athletic Footwear, Inc. v. Save Power Ltd.,* 1996 WL 328596, at *10 n.2 (D. Del. June 7, 1996) (taking judicial notice of complaint filed in Texas state court).

[2]     Copies of the original complaint, answer and amended complaint in the Ohio action are attached as Exhibits 1, 2 and 3, respectively.

## SUMMARY OF ARGUMENT

1.    The Court lacks personal jurisdiction over Alice Wedd.    The Complaint in this action fails to allege *any* facts that would establish a basis for jurisdiction over her under the Delaware long-arm statute or the due process standard. Accordingly, Ms. Wedd must be dismissed from this action.  Moreover, apart from an unreasonable and unenforceable forum selection clause, Plaintiff has failed to allege any facts that would make venue in Delaware appropriate, especially as it relates to counts two through four of the Complaint.

2.    The Complaint fails to state a claim upon which relief can be granted.  Count One, which purports to assert a claim for breach of contract fails to allege that any of the defendants have breached any purported duty to Plaintiff with respect to the A116 Extra Wide Language Easel, the sole product covered by the License Agreement, and therefore the complaint fails to state a claim for breach.  Plaintiff similarly fails to state a claim with respect to its claims for misappropriation, breach of fiduciary duty or unjust enrichment.

3.    Alice Wedd is not subject to the jurisdiction of this Court.  She is, however, a necessary and indispensable party with respect to the claims asserted in the Complaint.  Accordingly, this action should be dismissed pursuant to Rules 12(b)(7) and 19.

4.    The Court should stay further proceedings in this action on abstention grounds as the state law claims belatedly asserted in this Court were previously asserted in Ohio state court, where all of the parties are subject to personal jurisdiction.

## STATEMENT OF FACTS

Plaintiff is a New York corporation which has its principal place of business in Lancaster, Pennsylvania. Compl. ¶ 1. Defendant Alice's Home is a sole proprietorship located in Columbus, Ohio. *Id.* ¶ 2. Defendant William Wedd is also an Ohio resident who resides in Columbus. *Id.* ¶ 3. Defendant Alice Wedd is a pre-school teacher who has lived and worked her entire life in Ohio. *Id.* ¶ 4; Alice Wedd Aff. ¶¶ 2-3.[3]

Following her graduation from college, Ms. Wedd worked as a teacher and child care director. *Id.* ¶¶ 2-3. Ms. Wedd then went into educational product sales to public and private schools in Ohio. *Id.* ¶ 3. "Alice's Home" was started in 1992 by Ms. Wedd and her husband (defendant William Wedd) to design, manufacture, and market Ms. Wedd's early childhood product designs. Starting in early 1992, they designed and marketed other versions of the Extra Wide Language Easel including but not limited to the A100, A101, A103, A104, A105, A106, A108, A109, A110, A165, A175, A150, A153, and A154 models. These other easel models have different dimensions, sizes, shapes, features, and none has a shelf as does the A116. *Id.* ¶ 9.

Ms. Wedd started work for Childcraft in 1995 and was employed by Childcraft until her termination on May 16, 2003. In July 1996, Ms. Wedd presented Alice's Home products to Childcraft at its request for inclusion in its 1997 Childcraft

---

[3]     The August 29, 2005 Affidavit of Alice J. Wedd, filed in the Court of Common Pleas, Franklin County, Ohio, is being filed with the Court separately and will be cited herein as "Alice Wedd Aff. ¶ __." The September 9, 2005 Affidavit of William E. Wedd, filed herewith, is cited as "William Wedd Aff. ¶ __."

School Catalog. Childcraft said it wanted an "exclusive" easel product. Ms. Wedd suggested the A116, an easel which she designed for Childcraft. *Id.* ¶ 10.

In October 1996, at the Childcraft national sales meeting in Lancaster, Pennsylvania, Ms. Wedd presented, at Childcraft's request, the background of Alice's Home, the theory behind the extra wide language easel, and the features and benefits of the A116 easel. Present at that meeting were the entire Childcraft management staff, the company officers, the director of manufacturing, and the entire company sales force. *Id.* ¶ 11.

Soon thereafter, in 1997, Alice's Home manufactured A116 easels for Childcraft through purchase orders from Childcraft. Alice's Home had them manufactured by a small company called B+D Woodshack, located in Joliet, Illinois. *Id.* ¶ 12.

In April 1998 and earlier, Childcraft was well aware of the numerous Extra Wide Language Easels models because Ms. Wedd discussed them with Childcraft management and sales personnel. *Id.* ¶ 9. Childcraft is a large company (with revenues exceeding $100 million annually) with its own manufacturing subsidiary. Childcraft asked Ms. Wedd if it could manufacture the A116 under a license agreement which is how the license agreement idea developed. *Id.* ¶ 13.

After several years of working for Childcraft, Ms. Wedd negotiated a license agreement with Childcraft management for an Alice's Home product known as the A116 "Extra Wide Language Easel with a Shelf," which is attached and depicted in Exhibit A to the agreement. *Id.* ¶ 5. Ms. Wedd designed and developed this product for

Childcraft.  The license agreement did not pertain to any other products and expressly noted this.  *Id.*

As noted, before the license agreement was executed, Alice's Home had manufactured the A116 easel for Childcraft.  *Id.* ¶ 6.  Alice's Home signed a document provided by Childcraft stating at Childcraft's request that Childcraft had an "exclusive" product in the A116.  A copy of that agreement for 1997 is attached to the Alice Wedd Affidavit.  *Id.* ¶ 6.

The exclusivity arrangement changed when Childcraft advised Ms. Wedd that it wanted a license agreement effective April 1, 1998 for the A116.  *Id.* ¶ 7.  Childcraft prepared and sent Ms. Wedd a draft contract for her signature in 1997.  *Id.*  The license agreement submitted and proposed to Ms. Wedd was drafted by Childcraft, and lists her name as signing on behalf of Alice's Home.  Her husband William Wedd, however, owned the company and signed the agreement for Alice's Home.   All negotiations and discussions relative to this agreement took place in Ohio.  *Id.* ¶ 8.

The license agreement was executed, in part, to acknowledge Alice's Home's property rights and to allow Childcraft to manufacture, market, and distribute only the A116 easel and no other products including any other easels.[4]  *Id.* ¶ 14.

Neither Ms. Wedd nor Alice's Home has entered any other agreements with Childcraft regarding any other products other than the A116 easel.  *Id.* ¶ 16.  There

---

[4]    Childcraft requested design changes to the A116 in late 1998 or early 1999 and called Ms. Wedd for approval of these changes, which she provided.  Childcraft shipped her a product to review prior to the approved changes being made.  Childcraft has never contacted Ms. Wedd regarding other changes or different products or designs for other products, nor has she approved any.  Alice Wedd Aff. ¶ 15.

is no connection or relationship whatsoever between Ms. Wedd, Alice's Home, William Wedd, and the State of Delaware. None of the defendants conducts business in or with Delaware, nor derives revenue from Delaware of which they are aware, nor has caused any injury in Delaware. None of them has contracted to supply goods in Delaware, owns any property in Delaware, and they are not insurance sellers or sureties. None of them has had any contact with Delaware of any significance. *Id.* ¶ 17; William Wedd Aff. ¶ 21.

Ms. Wedd, who was not represented by counsel during the negotiations, asked about the paragraph concerning where a lawsuit would be filed in the event of a dispute with Childcraft, and its president Ronald Suchadolski told her that it was a "formality" and was necessary simply because "that is where business lawsuits are filed." Alice Wedd Aff. ¶ 18.

The only connection with Delaware alleged by Childcraft is a forum selection clause contained in a license agreement, the only parties to which are Alice's Home and Childcraft. It would be extraordinarily burdensome for Ms. Wedd and the other defendants to litigate this action in Delaware. They lack the resources to conduct litigation in two different states with attorneys necessary for both cases. Since her termination by Childcraft in May 2003, Ms. Wedd has not had steady work or income, and none of the defendants can afford to litigate in Delaware. *Id.* ¶ 1[9]; William Wedd Aff. ¶ 22. Unlike Plaintiff's substantial resources, none of the defendants has the financial resources necessary to litigate this action in a forum so far away and so remote from the witnesses and evidence necessary to trial of the case. *Id.*

<u>ARGUMENT</u>

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE.

    A.    The Court Lacks Personal Jurisdiction Over Alice Wedd.

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant. As this Court has observed:

> In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm sttute of the sate in which the court sits. If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Telcordia Techs., Inc. v. Alcatel S.A.*, 2005 WL 1268061, at *1 (D. Del. May 27, 2005) (citations omitted). The plaintiff has the burden of "alleging facts sufficient to make a prima facie showing of personal jurisdiction" which requires it to "adduce facts which establish with reasonable particularity that jurisdiction over [the defendant] exists." *Id.* at *2 (internal quotations omitted).

Here, the Complaint makes no allegations to establish personal jurisdiction over any of the defendants apart from reference to paragraph 16 of the License Agreement that was signed by Mr. Wedd on behalf of Alice's Home. Plaintiff concedes, as it must, that Ms. Wedd is not a party to the License Agreement and did not sign it. A party who is not a signatory to a forum selection clause, even those who are in some

sense "affiliated" with the signatory, is not bound by the clause. *See, e.g., Kelly v. McKesson HBOC, Inc.,* 2002 WL 88939, at *20 (Del. Super. Jan. 7, 2002); *Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.,* 42 F. Supp. 2d 423, 433 (D. Del. 1999). Accordingly, Plaintiff does not assert its breach of contract claim against Ms. Wedd. Rather, it alleges she breached her fiduciary duty of loyalty (Count Three) and claims that she and the other defendants misappropriated trade secrets (Count Two) and that all defendants are liable for "unjust enrichment" (Count Four). Plaintiff has failed to allege facts sufficient to establish jurisdiction in Delaware over Ms. Wedd pursuant to the Delaware long-arm statute or due process and, accordingly, she must be dismissed from this action.

The Delaware Long-Arm Statute (the "Act"), *Del. C. Ann.* tit. 10, § 3104, provides, in relevant part:

> (c)  As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > (2) Contracts to supply services or things in this State;
> >
> > (3) Causes tortious injury in the State by an act or omission in this State;
> >
> > (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> >
> > (5) Has an interest in, uses or possesses real property in the State; or

> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Five of the Act's subsections authorize the exercise of jurisdiction over nonresidents based on a direct nexus between the plaintiff's alleged injury and the Delaware actions of the defendant. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991); *Eudaily v. Harmon*, 420 A.2d 1175, 1180 (Del. 1980). Subsection (c)(4) of the Act, in contrast, does not require such a direct nexus between plaintiff's alleged harm and the actions upon which jurisdiction is based. *U.S. v. Consolidated Rail Corp.*, 674 F. Supp. 138, 143 (D. Del. 1987). None of the Act's jurisdiction provisions apply to Ms. Wedd.

Under subsection (c)(1), jurisdiction can be obtained over a nonresident who "transacts any business" in Delaware, if there is a nexus between the business and plaintiff's alleged injury. *Id.* at 142. Jurisdiction based on this subsection requires contacts that are more substantial than a gratuitous referral of an unsolicited purchase order, isolated phone calls or advertising in national magazines. *See, e.g.*, *Applied Biosystems*, 772 F. Supp. at 1466-67; *O'Neal v. Huxley Dev. Corp.*, 558 F. Supp. 462, 465 (D. Del. 1983); *Fischer v. Hilton*, 549 F. Supp. 389, 391 (D. Del. 1982). Moreover, the contacts must occur *in* Delaware. *See Moore v. Little Giant Indus., Inc.,* 513 F. Supp. 1043, 1046 (D. Del. 1981), *aff'd,* 681 F.2d 807 (3d Cir. 1982) (noting that "[s]hipment of goods into a state by common carrier, without more, does not constitute 'transaction of business.'"). In this case, Ms. Wedd does not have any contacts with Delaware. Alice Wedd Aff. ¶ 17. Obviously, therefore, she has not transacted business in Delaware and subsection (c)(1) cannot apply.

The second subsection of the Act authorizes the exercise of personal jurisdiction over nonresident defendants who contract to "supply services or things" in Delaware. *See* 10 *Del. C.* § 3104(c)(2). Ms. Wedd has never contracted to supply any services or things to anyone in Delaware and, accordingly, this subsection of the Act does not provide a basis for jurisdiction over her.

Subsection (c)(3) of the Act authorizes jurisdiction over nonresident defendants who cause tortious injury in Delaware by an act or omission *in* Delaware. Ms. Wedd is not alleged to have caused any injury in Delaware, let alone by an act or omission in Delaware. Accordingly, no act or omission by her in the State of Delaware could have caused any injury and subsection (c)(3) is thus not applicable. *See Moore,* 513 F. Supp. at 1046 (rejecting plaintiffs' suggestion that, although defendant designed and manufactured the product in another state, the tortious act should be deemed to have occurred in Delaware, the state of the injury).

Subsections (c)(5) and (6) of the Act, which authorize the exercise of jurisdiction with respect to (1) a defendant's interest in, use or possession of real property and (2) a defendant's contract to insure that is located, executed or performed in Delaware, are likewise inapplicable. *See* 10 *Del. C.* § 3104(c)(5) and (6). Plaintiff's claims against Ms. Wedd are not related to such matters and, therefore, the necessary nexus is absent. Moreover, Ms. Wedd does not have any interest in, use or possess real property in Delaware and has not contracted to act as a surety for any person or risk in Delaware. Alice Wedd Aff. ¶ 17.

Subsection (c)(4) of the Act requires a greater extent of contacts with Delaware than the Act's other subsections, but also permits the exercise of jurisdiction in

Delaware over claims not directly related to those contacts. *Applied Biosystems*, 772 F. Supp. at 1469. Ms. Wedd's Affidavit establishes that she does not derive substantial revenue or engage in any persistent course of conduct in Delaware. Accordingly, subsection (c)(4) of the Act also cannot provide a basis for asserting jurisdiction over her.

Nor would the exercise of personal jurisdiction over Ms. Wedd comport with the requirements of the Due Process Clause. Even if the Act applied to Ms. Wedd, she should be dismissed from this action because she does not have the requisite minimum contacts with Delaware. A court may exercise jurisdiction only when a defendant "should reasonably anticipate being haled into court" based on its contacts with the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As the Supreme Court has explained, the constitutional touchstone is "whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This determination requires the Court to consider whether the defendant solicits or closes sales in the forum, performs services in the forum, or directly or indirectly seeks to serve the forum's market. *See World-Wide Volkswagen*, 444 U.S. at 295.

As is evident from Ms. Wedd's Affidavit, she has not purposefully established any contacts, let alone minimum contacts, with the State of Delaware. Because Ms. Wedd does not have minimum contacts with Delaware, this action may not proceed. *See Fischer v. Hilton*, 549 F. Supp. 389, 392-93 (D. Del. 1982) (defendant's advertising in surrounding states, location on interstate highway, and one phone call to Delaware did not establish minimum contacts). Moreover, the interests of Delaware in this action are minimal because none of the parties is a Delaware resident. *See Applied*

*Biosystems*, 772 F. Supp. at 1472 ("in *Asahi*, as here, the plaintiff was not a resident of the forum state, and therefore the Supreme Court found that the interests of the forum in the litigation were 'considerably diminished.' We similarly find that the interests of the state of Delaware in the present litigation are minimal."). While Plaintiff has an interest in obtaining relief, that alone is not sufficient to justify asserting jurisdiction over Ms. Wedd, especially when relief is available to Plaintiff in a pending state court action filed in Ohio.

>    B.    Because The License Agreement's Forum Selection
>           Clause Is Unreasonable, Venue Is Improper As To
>           Alice's Home And William Wedd.

The sole basis alleged in the Complaint for venue in Delaware is paragraph 16 of the License Agreement, to which Ms. Wedd is not a party. Compl. ¶ 6. Plaintiff has not named Ms. Wedd as a defendant in the count asserting an alleged breach of the License Agreement (Count One), and has alleged no facts to establish the propriety of venue in Delaware over Ms. Wedd with respect to the claims for misappropriation, breach of fiduciary duty or unjust enrichment (Counts Two, Three and Four). Accordingly, venue is improper in Delaware as to Ms. Wedd and she must be dismissed.

Nor is venue, which is premised entirely upon the License Agreement's forum selection clause, proper in Delaware as to Alice's Home or Mr. Wedd. Forum selection clauses are generally upheld unless they are shown to be unreasonable. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585 (1991).[5] In the Third Circuit, a forum selection clause may be disregarded

---

[5]    In the Third Circuit, the validity of a forum selection clause in a diversity action is a matter of federal law, not state law." *Jumara v. State Farm. Inc. Co.*, 55 F.3d

(continued . . .)

when "enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Mobilificio San Giacomo S.P.A. v. Stoffi*, 1998 WL 125534, at *5 (D. Del. 1998) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 201 (3d Cir. 1983)). Similarly, where there is "such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court" a forum selection clause may be disregarded. *Simm Assocs., Inc. v. PNC Nat'l Bank*, 1998 WL 961764, at *3 (Del. Super. Oct. 8, 1998) (quoting *Pelleport Investors, Inc. v. Budco Quality Theaters, Inc.*, 741 F.2d 273 (9th Cir. 1984)). This is such a case.

In assessing whether a forum selection clause is unreasonable, courts have looked to "(1) which law controls the contractual dispute: (2) what residency do the parties maintain; (3) where the contract was executed; (4) where are the witnesses and parties to the litigation located; and (5) whether the forum's designated location is inconvenient to the parties." *Preferred Capital, Inc. v. Sarasota Kennel Club*, 2005 WL 1799900, at *4 (N.D. Ohio July 27, 2005). These factors demonstrate that litigation in Delaware is unreasonable. Delaware law may control Childcraft's claim for breach of contract based on the choice of law provision in the Licensing Agreement. However, Childcraft's misappropriation of trade secrets claim, breach of fiduciary duty claim, and unjust enrichment claim are not controlled by the choice of law provision and therefore are not governed by Delaware law. Childcraft is a New York corporation with a principal

---

(. . . continued)
    873, 879 (3d Cir. 1995); *Mobilificio San Giacomo S.P.A. v. Stoffi*, 1998 WL
    125534, at *5 (D. Del. 1998); *Dentsply Int'l, Inc. v. Benton*, 965 F. Supp. 574,
    577 (M.D. Pa. 1997)

place of business in Pennsylvania and doing business in Ohio. All of the defendants are Ohio residents. The contract was negotiated between Ms. Wedd and her employer in Ohio and was executed in Ohio. All of the alleged conduct occurred in Ohio, where most, if not all, of the witnesses are located. While a Delaware forum may not be inconvenient to Childcraft, a company with over $100 million in annual revenues, it is inconvenient to all of the defendants: two individuals, one of whom is out of work, and a sole proprietorship that does business out of a home. *See* Alice Wedd Aff. ¶¶ 17, 1[9]; William Wedd Aff. ¶¶ 21-22.

The *only* nexus between this case and Delaware is that Alice's Home has a Licensing Agreement with Childcraft providing that Delaware law governs interpretation and enforcement of the Licensing Agreement and by which Alice's Home consented to jurisdiction for actions "arising out of" or "in connection with" the Licensing Agreement.[6] Childcraft is not incorporated in Delaware, does not have a principal place of business in Delaware, and does not contend that this action arises out of any actions in Delaware. Alice's Home is an unincorporated sole proprietorship owned by William Wedd and operated from his home in Columbus, Ohio. Alice Wedd is a lifelong Ohio resident, who is estranged from her husband and since the termination of her employment

---

[6]    Count One is the only claim that "arises out of" or "is in connection with" the Licensing Agreement. The remaining counts for misappropriation of trade secrets, breach of fiduciary duty and for unjust enrichment relate to conduct that allegedly arose out of Ms. Wedd's actions as an employee of Childcraft. Any employment related issues that Childcraft may have with Ms. Wedd and any fiduciary duties that she may have owed to her former employer do not arise out of and are not in connection with the Licensing Agreement between Childcraft and Alice's Home. Therefore the forum selection, choice of law and consent to jurisdiction provisions found in the Licensing Agreement are not applicable to Counts Two, Three and Four.

with Childcraft, which is the subject of a pending lawsuit in Ohio state court, has been searching for employment in Ohio. Alice Wedd Aff. ¶¶ 1, 2, [9]. Defendants lack the financial resources necessary to litigate this action in Delaware and litigating this action in Delaware may effectively deprive them of a meaningful day in court. Alice Wedd Aff. ¶ 1[9]; William Wedd Aff. ¶ 22.

Simply put, the only connection between this action and Delaware is that Alice's Home -- not William Wedd in his individual capacity and certainly not Alice Wedd -- consented to jurisdiction in Delaware for disputes arising out of or in connection with the Licensing Agreement. None of the defendants have any other connections with Delaware, there is related litigation pending in Ohio, and the defendants do not have the financial ability to defend themselves in a distant forum. Courts have declined to enforce forum selection clauses negotiated between an employee and an employer and when the employee does not have the financial ability to litigate in the forum specified in the forum selection clause. *See Jelich v. Warner Brothers, Inc.*, 1996 WL 209973 (S.D.N.Y.); *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991); *Easds v. Woodsmen of the World Life Ins. Soc.*, 785 P.2d 328, 331 (Okla. App. 1989). This Court should do the same in this case.

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true the allegations in the complaint. The Court need not, however, "accept legal conclusions either alleged or inferred from the pleaded facts." *See Resource Venture, Inc. v.*

*Resources Mgmt. Int'l, Inc.,* 42 F. Supp. 2d 423, 437-38 (D. Del. 1999) (internal quotation omitted).

> A.    Count One Fails To State A Claim Against Alice's
>        Home And Mr. Wedd.

Count One alleges a breach of contract against Alice's Home and William Wedd[7] "by marketing, offering for sale, selling and manufacturing the 'Extra Wide Language Easel'." Compl. ¶ 22. The use of this generic term is not insignificant. The Licensing Agreement relates only to the "Extra Wide Language Easel" depicted in Exhibit A of the Licensing Agreement. Alice's Home markets many different models of "Extra Wide Language Easels" with different dimensions, sizes, shapes, and features but the model depicted in Exhibit A is *Model A116* – the only model marketed by Alice's Home with a shelf. Alice's Home retained the right to market, offer for sale, sell and manufacture other models of the "Extra Wide Language Easel". The conduct claimed to be a breach of the Licensing Agreement is not prohibited by the Licensing Agreement. Therefore Count One fails to state a claim upon which relief can be granted against either Alice's Home or William Wedd.

> B.    Count Two Fails To State A Claim Against The
>        Defendants Under The Delaware Uniform Trade
>        Secrets Act Because Delaware Law Is Not
>        Applicable To The Claim.

Count Two alleges a Misappropriate of Trade Secrets against all of the defendants under Delaware statutory law for allegedly misappropriating Childcraft's

---

[7]    Ms. Wedd is not a signatory to the Licensing Agreement and is, correctly, not named as a Defendant in Count One.

customer lists and pricing information which Ms. Wedd purportedly obtained as an employee of Childcraft.[8]  *See* Compl. ¶¶ 15-18.  Misappropriation of trade secrets is a statutory cause of action and does not "arise out of" and is not "in connection with" the Licensing Agreement.  If anything, it arises out purported conduct of Ms. Wedd as an employee of Childcraft.  Therefore, the choice of law and consent to jurisdiction provisions are inapplicable to Count Two against all of the defendants.  Childcraft has no basis on which it can bring this action under Delaware law without the application of these terms of the Licensing Agreement.  Childcraft therefore fails to state a claim under the Delaware Uniform Trade Secrets Act.

Even if Count Two were somehow deemed to "arise out of" or be "in connection with" the Licensing Agreement, there is no basis for bringing a claim against Ms. Wedd under the Delaware Uniform Trade Secrets Act.  Ms. Wedd is not a signatory to the Licensing Agreement, and did not consent to jurisdiction in Delaware, or the application of Delaware law to her purported actions as an employee of Childcraft in Ohio.  Count Two, therefore, fails to state a claim because Delaware law is not applicable to Childcraft's trade secrets claims.

C.    The Court Lacks Personal Jurisdiction Over Ms. Wedd and Count Three Is Superceded by the Misappropriation of Trade Secrets Claim.

Plaintiff alleges that Ms Wedd, "as an employee of Childcraft" owed Childcraft a fiduciary duty "not to use or disclose Childcraft's confidential, proprietary or

---

[8]    The Complaint refers to *Del. C. Ann.* tit. 20, § 2001, *et seq.*  Title 20 relates to Military and Civil Defense.  Presumably, Childcraft intended to bring Count Two under 6 *Del. C.* §§ 2001-09 (Trade Secrets) and defendants will address Count Two under that presumption.

trade secretion information except in furtherance of Childcraft's business and barred her from performing services for a competitor of Childcraft such as Alice's Home." Compl. ¶ 33. Like Count Two, Childcraft's breach of fiduciary duty claim does not "arise out of" and is not "in connection with" the subject matter of the Licensing Agreement. If anything, and to the extent that such fiduciary duties exist for an employee, it arises out of Ms. Wedd's employment with Childcraft.[9]  Childcraft has not referred to any employment contract that would provide for the employee's consent to jurisdiction in Delaware for actions arising out of her employment relationship with Childcraft. Nor has Childcraft pled any facts that would support jurisdiction over Ms. Wedd on any other basis. Ms. Wedd has not consented to personal jurisdiction in Delaware and the Court therefore lacks personal jurisdiction over her. *See supra* Argument § I.

In addition, the breach of fiduciary duty claim is superceded by the misappropriation of trade secrets claim. The Delaware Uniform Trade Secrets Act displaced common law claims for the same alleged conduct as a misappropriation of trade secrets claim. *See* 6 *Del. C.* § 2007(a); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002). The breach of fiduciary duty claim arises out of the same conduct that forms the basis for Childcraft's trade secrets claim – the alleged use of Childcraft's information to benefit defendants. Compl. ¶ 34. Common law claims that are based on the same alleged conduct are precluded by the Uniform Trade Secrets Act. *Savor,* 812 A.2d at 898.

---

[9]    Fiduciary duties of employees are generally limited because employees' rights and obligations are generally governed by contract. *See Science Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 964-65 (Del. 1980).

    D.    Count Four Fails To State A Claim And Is
            Superceded By The Misappropriation Of Trade
            Secrets Claim.

Count Four alleges that all defendants have been unjustly enriched by their alleged wrongful actions. "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *ID Biomedical Corp. v. TM Technologies, Inc.,* 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 (Del. 1988)). "[C]ourts developed unjust enrichment, or quasi-contract, as a theory of recovery to remedy the absence of a formal contract." *ID Biomedical,* 1995 WL 130743, at *15; *Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, 1997 WL 529587, at *17 (Del. Super. Jan. 29, 1997). "[A] party cannot seek recovery under an unjust enrichment theory if a contract is the measure of the plaintiff's right." *Id.*; *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979); *Resource Venture, Inc. v. Resource Management Int'l, Inc.*, 42 F. Supp. 2d 423, 429 (D. Del. 1999); *Weiper v. W.A. Hill Assoc.*, 661 N.E.2d 796, 804 (Ohio App. 1995). Here, Childcraft has a contractual relationship with Alice's Home. Childcraft may not also seek recovery for unjust enrichment under a quasi-contractual theory against Mr. Wedd  and Ms. Wedd in addition to the rights that are delineated in the Licensing Agreement with Alice's Home.

In addition Count Four arises out of the same underlying conduct as Childcraft's misappropriation of trade secrets claim, and to the extent that the Delaware Uniform Trade Secrets Act were applicable as Plaintiff argues, common law claims arising out of the same alleged conduct are displaced and not permitted. *See Savor,* 812

A.2d at 898. Indeed, unjust enrichment is a measure of damages under the Delaware Uniform Trade Secrets Act. *See* 6 *Del. C.* § 2003(a).

### III. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULES 12(B)(7) AND 19.

Under Rule 19, the Court engages in a two-step inquiry. First, the Court must determine if the party is a "person to be joined if feasible" under Rule 19(a). If the party is "necessary" under Rule 19(a), and if joinder of the party is not feasible, the Court must determine whether "in equity and good conscience the action should proceed among the parties before it, or be dismissed" by considering the factors set forth in Rule 19(b). *See, e.g., Little Switzerland, Inc. v. Destination Retail Holdings Corp.,* 1999 WL 223496, at *3 (D. Del. Mar. 31, 1999).

### A. Ms. Wedd Is A Necessary Party.

In determining whether a party is "necessary" under Rule 19(a), courts evaluate whether:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede that person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a); *Angst v. Royal MacCabees Life Ins. Co.,* 77 F.3d 701, 705 (3d Cir. 1996). Rule 19(a) is written in the disjunctive and, if a party's absence results in any of the identified situations, that party is deemed necessary. Here, Ms. Wedd is clearly "necessary" under Rule 19(a).

That joinder of Ms. Wedd is required by Rule 19(a) is evident from the relief requested (which is requested against each of the defendants in entirely similar fashion) and the four counts for relief. As to Count Three, for an alleged breach of fiduciary duty of the employee duty of loyalty and which is asserted against only Ms. Wedd, it is clear that she is a necessary party. In Count Two, Plaintiff alleges that Ms. Wedd disclosed Childcraft's trade secrets (identified only as "customer lists and pricing information") to the other two defendants, and that those two defendants knew or had reason to know that the alleged trade secrets were acquired by improper means. Compl. ¶¶ 10, 17, 19-20. Following this alleged wrongdoing, Plaintiff purportedly learned that Alice's Home and William Wedd were selling and manufacturing extra wide easels in supposed breach of the License Agreement (Count One), all of which caused each of the defendants to be unjustly enriched (Count Four). A central element to Plaintiff's claims is the alleged conduct of Ms. Wedd, with whom Plaintiff interacted – and which evidences the conclusion that she is a necessary party. *See Jurimex Kommerz Transit GMBH v. Case Corp.,* 201 F.R.D. 337, 340 (D. Del. 2001) ("the Subsidiaries are necessary parties under Rule 19(a) because Plaintiffs' interactions were almost entirely with the Subsidiaries").

      B.    "In Equity and Good Conscience" This Action
               Should Not Proceed In The Absence of Ms. Wedd.

Not only is Ms. Wedd necessary under Rule 19(a), but in equity and good conscience this action should not proceed against the remaining defendants in her absence. Under Rule 19(b), the Court considers:

First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective

> provisions in the judgment, by shaping of relief, or other
> measures, the prejudice can be lessened or avoided; third,
> whether a judgment rendered in the person's absence will
> be adequate; fourth, whether the plaintiff will have an
> adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Here, the Rule 19(b) factors favor dismissal.

As the Third Circuit has explained, "[t]he first factor under Rule 19(b)

overlaps considerably with the Rule 19(a) analysis." *Gardiner v. Virgin Islands Water &*

*Power Auth.,* 145 F.3d 635, 641 n.4 (3d Cir. 1998). A judgment in favor of Plaintiff in

the absence of Ms. Wedd would encourage piecemeal litigation requiring Plaintiff to re-

litigate the same (and additional) issues in an action by Ms. Wedd. As a practical matter,

however, her ability to litigate these claims may be negatively impacted by any

declaration in favor of Plaintiff. As such, the first factor weighs in favor of dismissal.

*See Jurimex,* 201 F.R.D. at 340 ("A judgment against Defendant would undoubtedly

prejudice the Subsidiaries, whose conduct is largely at issue in this case."). Nor are there

any apparent ways in which protective provisions in the judgment or other measures (the

second factor under Rule 19(b)) can lessen or avoid the prejudice. Because Plaintiff

seeks, among other things, to impose liability for misappropriation against all of the

defendants, based apparently upon Ms. Wedd's conduct as an employee, it will not be

possible to lessen or avoid the prejudice to Ms. Wedd of a ruling in favor of Plaintiff.

Accordingly, the first two Rule 19 factors, prejudice to the absent or remaining parties

and the ability to craft an order to lessen any prejudice, each favor dismissal. *See id.* at

340-41 (judgment in absence of subsidiaries would not be adequate because plaintiffs

could sue them in another jurisdiction based on "essentially the same facts" and a

judgment for the plaintiffs would "be 'hollow' because the proper defendant was never joined.").

The third and fourth Rule 19(b) factors similarly favor dismissal. The Supreme Court has explained that the third factor, whether a judgment rendered in the person's absence will be adequate, refers to the "public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111 (1968). Here, a judgment rendered in the absence of Ms. Wedd will not be adequate because "without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party." *Tell v. Trustees of Dartmouth College,* 145 F.3d 417 (1st Cir. 1998). Here, Ms. Wedd and William Wedd are estranged, and Plaintiff alleges that William Wedd and Alice's Home received purportedly confidential information from Ms. Wedd, all of which may affect the manner in which Ms. Wedd litigates issues *vis a vis* the other defendants. The fourth factor, the availability of a remedy if the action is dismissed, clearly favors dismissal. Ms. Wedd, who is not subject to jurisdiction in Delaware, has commenced an action in Ohio against Plaintiff and against James Green, who also is subject to jurisdiction in Ohio but not Delaware. Alice's Home is also party to the Ohio action, and Mr. Wedd (based on the allegations of Plaintiff's Complaint) is subject to jurisdiction in Ohio as well. Accordingly, Plaintiff has a remedy if the action is dismissed for nonjoinder. *See Jurimex,* 201 F.R.D. at 341 (noting that litigation could proceed with all necessary parties in Paris, France among other foreign forums and dismissing complaint under Rule 19(b)).

In equity and good conscience, this action should be dismissed. The dismissal will not leave Plaintiff without a remedy as it is already party to a prior-filed action state court action in Ohio where each of the claims that are at issue here, and additional issues not included in the Complaint, can be conveniently and efficiently litigated.

IV.    THE COURT SHOULD STAY THIS ACTION IN FAVOR OF A PRIOR-FILED ACTION PENDING IN STATE COURT IN OHIO.

"[T]he power to stay or dismiss federal proceedings pending resolution of a State court action rests within the sound discretion of the trial court." *Sea Colony Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1326 (D. Del. 1987), citing *Harvey & Harvey v. Delaware Solid Waste Authority*, 600 F. Supp. 1369, 1377 (D. Del. 1985); *Gilbane Bldg. Co. v. Nemours Foundation*, 568 F. Supp. 1085, 1089 (D. Del. 1983). This discretion stems from this Court's inherent power to control its docket. *Id.*; *see also Maloney v. Gordon*, 328 F. Supp. 2d 508, 511 (D. Del. 2004) citing *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 (1936). While the general rule is that the "pendency of a state court proceeding is not a reason for a federal court to decline to exercise jurisdiction established by Congress," *Sea Colony*, 653 F. Supp. at 1325, the United States Supreme Court has held that a federal court may appropriately stay a proceeding where (1) parallel state court proceedings exist and (2) exceptional circumstances make abstention appropriate. *See Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

A.    The Ohio Action and this Delaware Action are Parallel.

A parallel proceeding does not necessarily require the claims be identical, but rather "substantially similar." *Id.* (citing *Guenveur v. State Farm Mutual Ins. Co.*, 551 F. Supp. 1044, 1046 (D. Del. 1982)).    Lawsuits are considered parallel if "substantially the same parties litigate substantially the same issues in different forums."[10] *New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991), *cert. denied*, 503 U.S. 971 (1992).    The Delaware federal action and Ohio state action arise out of the same set of operative facts, and are largely mirror images of each other.    Both complaints include allegations of misappropriation of trade secrets, unjust enrichment, and breaches of contracts.

In the Ohio Action, plaintiff Alice's Home asserts claims against defendant Childcraft for trade secret misappropriation, breach of a licensing contract, and unjust enrichment.[11]    *See* Ohio First Amend. Comp. ¶¶ 15-17, 25-39.    Similarly, in this Delaware Action, plaintiff has asserted claims against defendant, Alice's Home, for

---

[10]    The inclusion of William Wedd as a named defendant in this Action does not affect the finding that the actions involve "substantially the same parties."  Alice's Home is a sole-proprietorship owned by William Wedd; therefore, any claim asserted by or against Alice's Home is *de jure*, a claim by or against William Wedd.  *See Harleysville Mut. Ins. Co. v. Grzbowski*, 2002 WL 1859193, at *2 (Del. Super. Aug. 9, 2002) (a sole proprietorship is not a distinct legal entity).  Additionally, William Wedd could easily be added as a party to the Ohio Action because there is no dispute that he is subject to the personal jurisdiction of the Ohio courts.  *See* Compl. ¶ 3 (William Wedd resides at 2784 Shady Ridge Drive, Columbus, Ohio 43231).

[11]    The Ohio Action also involves claims by Alice's Home against CEC based on unfair competition and interference with existing and prospective contractual relationships and slander.  *See* Ohio First Amend. Comp. ¶¶ 18-20, 34-37.

misappropriation of trade secrets, breach of a licensing contract, and unjust enrichment. *See* Compl. ¶¶ 21-31, 37-39.

In the Ohio Action, plaintiff, Alice Wedd, has asserted claims against Childcraft based on a breach of an employment agreement between them. *See* Ohio First Amend. Comp. ¶¶ 21-24. Likewise, in this Delaware Action, plaintiff has asserted claims against defendant, Alice Wedd, based on an alleged breach of duty arising out of the same employment relationship. *See* Compl. ¶¶ 32-36.

Accordingly, because "substantially the same parties" are litigating "substantially the same issues in different forums," these cases are parallel. *See New Beckley Mining Corp.*, 946 F.2d at 1073.

B.    Abstention is Warranted in This Case.

After establishing the parallel nature of the cases, "the party seeking the stay must 'carry the burden of demonstrating that adequate grounds exist to justify granting the stay.'" *See Sea Colony*, 653 F. Supp. at 1326. The defendant must demonstrate either the existence of "exceptional circumstances" or "a clear case of hardship or inequity in being required to go forward" before the court will issue a stay. *Sea Colony*, 653 F. Supp. at 1326 (citing *Guenveur*, 551 F. Supp. at 1046 (noting *Colorado River*, 424 U.S. at 817-19)). As stated in *Moses H. Cone Hospital v. Mercury Construction Corp.*:

> The decision of whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case . . . .

460 U.S. 1, 16 (1982).

In *Colorado River*, the United States Supreme Court identified several factors federal courts should consider in determining whether exceptional circumstances exist in a particular case:  (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation;  (3) the order in which the proceedings were initiated; and (4) the presence of a *res* or property over which jurisdiction has been asserted.  *Sea Colony*, 653 F. Supp. at 1326 (citing *Harvey & Harvey v. Delaware Solid Waste Authority*, 600 F. Supp. 1369, 1375 (D. Del. 1985)).  Two additional criteria were considered by the United States Supreme Court in *Moses H. Cone Hospital*:  (5) whether federal law provides the rule of decision on the merits, 460 U.S. at 23, and (6) the adequacy of the state court proceedings to protect plaintiff's rights.  *Id.* at 26; *Sea Colony*, 653 F. Supp. at 1326.   Additionally, this Court has considered three additional factors:  (7) the identity of the issues in the two forums;  (8) the existence of a federal policy militating either in favor of or against the stay;  and (9) the existence of an important countervailing federal interest which federal courts might be more likely than state courts to respect or enforce.  *Id.* at 1326-27.   The nine factors favor the Court exercising its discretion to order a stay in this case.

1.     Inconvenience of the Federal Forum

In determining whether a federal forum is inconvenient to the parties, this Court must consider the relative ease of access to the sources of proof, the availability of compulsory process for attendance of unwilling witnesses, and the enforceability of a judgment if one is obtained.  *Gilbane Bldg. Co. v. Nemours Foundation*, 568 F. Supp 1085, 1089 (D. Del.1983); *see also Sea Colony*, 653 F. Supp. at 1327 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).   Delaware is an inconvenient forum.  A

majority of the witnesses and proof necessary to litigate this action are located in Ohio, the home of defendants Alice's Home, William Wedd, and Alice Wedd. *See* Alice Wedd Aff. ¶¶ 17, 1[9]; William Wedd Aff. ¶¶ 21-22. Any other necessary proof or witnesses would likely be found in Pennsylvania, the home of plaintiff Childcraft. There will be no evidence or witnesses located in Delaware. More importantly, as discussed above, Alice Webb is not subject to this Court's jurisdiction. Clearly, this factor greatly militates in favor of abstention.

### 2.     Avoidance of Piecemeal Litigation

The desirability of avoiding piecemeal litigation, referred to by the United States Supreme Court as the most important *Colorado River* factor, *see Sea Colony*, 653 F. Supp. at 1327 (citing *Moses H. Cone Hospital*, 460 U.S. at 16), favors abstention. As stated in *Sea Colony*, this court should analyze the possibility of satisfactory adjudication in the state forum, the joinder of necessary parties, and whether parties are amenable to process. *Sea Colony*, 653 F. Supp. at 1327 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)).

With respect to the satisfactory adjudication in the state forum, the issues in the state and federal proceedings are identical in that they depend on the application of state law precedent to issues concerning breaches of a licensing contract, misappropriation of trade secrets, unjust enrichment and breaches of an employment contract. However, because these issues should be decided based on Ohio state law, the Ohio court may be a better arbiter of the underlying claims. This factor tips the scales toward abstention.

More importantly, and as more fully discussed above, Alice Webb cannot be joined as a necessary party, nor is she amenable to service of process. *See supra* Argument § III. Accordingly, this Delaware Action will invariably lead to "piecemeal" litigation with respect to all the claims asserted by and against Alice Wedd. This factor, accordingly, weighs heavily in favor of abstention. *See Moses H. Cone Hospital*, 460 U.S. at 16.

### 3.     Order In Which Jurisdiction Was Obtained

It is clear that the Ohio state court proceeding was initiated almost six weeks before this Delaware federal action was filed. "This [priority] factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Hospital*, 460 U.S. at 21. Although neither action has proceeded to discovery, defendants in Ohio have answered and this factor favors abstention or, at a minimum, is neutral.

### 4.     Presence of a *Res* or Property

Neither the Ohio court nor this Court has asserted jurisdiction, or will be required to assert jurisdiction, over property in this proceeding. This factor is neutral.

### 5.     Rule of Decision on the Merits

The fifth factor to consider is whether state or federal law will supply the rule of decision. *Sea Colony*, 653 F. Supp. at 1326. All of the claims asserted in the Delaware Action are state law claims. *See* Compl. pp. 5-7 (Count One (Breach of Contract: Alice's Home/William Wedd); Count Two (Misappropriation of Trade Secrets: All Defendants); Count Three (Breach of Employee Duty of Loyalty: Alice Webb); and

Count Four (Unjust Enrichment: All Defendants)). Clearly, federal law will not supply the rule of decision for any of these state law claims. This factor weighs in favor of abstention. *See Gilbane*, 568 F. Supp. 1085, 1091 (D. Del. 1983) ("if the parallel state-court action is in [a state court and that state court is applying its own state law], then this factor would weigh in favor [of abstention].")[12]

6.      Adequacy of the State Court Proceeding to Protect Plaintiff's Rights

The sixth factor relates to the ability of the state court to adequately protect plaintiff's rights. The Ohio state court can exercise jurisdiction over all the parties, but this Court cannot. As such, there is no question that the Ohio Court can effectively protect all the parties' rights. *Cf. Moses H. Cone Hospital*, 460 U.S. at 26. This factor weighs in favor of abstention.

7.      Identity of Issues

The state and federal court proceedings are parallel and, if not identical, then at least "substantially similar." *See Sea Colony*, 653 F. Supp. at 1329. All the claims that have been asserted in this Delaware Action are also before the Ohio state court. *Compare* Comp. ¶¶ 21-39 (Counts 1-4) *and* Ohio First Amend. Comp ¶¶ 15-17, 21-39 (Counts 1, 3, 4 and 6) (Each action contains a (i) misappropriation of trade secrets claim, (ii) a breach of a licensing contract claim, (iii) an unjust enrichment claim, and (iv)

---

[12]      The only claim that may not implicate Ohio state law is the Count One, the breach of the licensing contract claim. Plaintiff asserts that there is a Delaware forum selection clause/choice of law provision in the licensing contract, the enforceability of which is at issue in this action.

a claim based on a breach of an employment contract.). This factor weighs in favor of abstention.

8.    Federal Policy Militating in Favor or
       Against the Stay

In *Sea Colony*, the court considered two federal policies which militated in favor of granting the stay: judicial economy and comity between state and federal courts. *Sea Colony*, 653 F. Supp. at 1329.   Just as in *Sea Colony*, judicial economy and comity militate in favor of this Court staying this Delaware Action.   Because all of the issues before this Court are also before the Ohio state court, separate trials will undoubtedly result in the inefficient expenditure of valuable judicial resources.  *Id.*  Furthermore, a stay of this action will likely promote comity by removing the possibility of differing results in the two actions which could engender difficult problems in reaching an ultimate disposition of the issues involved both actions.  *Id.*  This factor favors abstention.

9.    Important Countervailing Federal Interest
       Which Federal Courts Are More Likely to
       Respect

There is no federal interest present which a federal court is more likely to respect or enforce than the state court.   The absence of this factor counsels in favor of granting the stay.  *Id.* at 1329 (citing *Guenveur*, 551 F. Supp. at 1048).

There can be no argument as to the parallel nature of this Delaware Action and the Ohio Action.  Additionally, the overwhelming majority of *Colorado River* factors militate in favor of abstention.   Accordingly, this Court should exercise its inherent discretionary power to stay this action.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, to stay this action should be granted.


MORRIS, NICHOLS, ARSHT & TUNNELL

_____
S. Mark Hurd (#3297)
Jerry C. Harris (#4262)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  Attorneys for Defendants


OF COUNSEL:

James P. Connors
Law Offices of James P. Connors
221 South High Street
Columbus, OH  43215

September 9, 2005

482255

CERTIFICATE OF SERVICE

I, S. Mark Hurd, hereby certify that on September 9th, 2005, I electronically filed DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, ON IN THE ALTERNATIVE, TO STAY, which will send notification of such filing(s) to the following:

> Allen M. Terrell, Jr., Esq.
> Kelly E. Farnan, Esq.
> RICHARDS, LAYTON & FINGER
> One Rodney Square
> Wilmington, DE 19899

S. Mark Hurd (#3297)