Exhibit 1

**IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO**

| | | |
|---|---|---|
| Alice's Home<br>2784 Shady Ridge Drive<br>Columbus, OH 43231 | : <br> : <br> : | **05CVH05   5417** |
| | : | Case No: |
| Alice J. Wedd<br>2784 Shady Ridge Drive<br>Columbus, OH 43231 | : <br> : <br> : | Judge: |
| | : | Category H |
| Plaintiffs, | : <br> : | |
| vs. | : <br> : | |
| Childcraft Education Corporation<br>2920 Old Tree Drive<br>Lancaster, PA 17603 | : <br> : <br> : <br> : | |
| James W. Green<br>447 Landings Loop East<br>Westerville, OH 43082 | : <br> : <br> : | |
| Defendants. | : <br> : | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**(Jury Demand Endorsed Hereon)**

Plaintiffs Alice's Home and Alice J. Wedd, for their complaint against the defendants,

state the following:

**I.   Nature of the Action.**

1.   Plaintiff Alice's Home brings this action to recover damages for, and to enjoin

defendants from, the unlawful conversion and misappropriation of its trade secrets and proprietary

and confidential business information.   Without privilege or consent, defendants unlawfully

obtained plaintiff's trade secrets and proprietary confidential business information and used it to

their economic advantage.

Plaintiff Alice Wedd asserts claims for wrongful discharge and, along with Alice's Home, assert a claim for slander against Childcraft and James Green

## II.    Jurisdiction, Venue and the Parties.

2.    Plaintiff Alice's Home is a sole proprietorship owned and operated by William E Wedd with its principal place of business at the above address, where it has resided at all times pertinent to the claims being made in this action. Plaintiff Alice Wedd was also a Franklin County resident at all times material to the claims.

3.    Defendant Childcraft Education Corp. ("Childcraft") is a New York corporation which conducts business in Ohio as a foreign corporation with its principal place of business at the address listed above. Defendant James Green was Alice Wedd's direct supervisor at the time of her discharge from employment with Childcraft and resides at the above address.

4.    This court has both personal and subject matter jurisdiction over the parties and venue is proper pursuant to Rule 3(B) of the Ohio Rules of Civil Procedure.

## III.    Facts Common to All Claims.

5.    In March 1995, Alice Wedd became employed by Childcraft as a sales representative. At that time, Childcraft was aware that Alice and her husband William worked in the early childhood educational products industry and had been involved with the sole proprietorship known as Alice's Home which conducted business from the above address

6.    Alice's Home and Childcraft conducted business with each other while Alice was employed with Childcraft. The defendants were obviously aware of Alice's relationship both to William Wedd, her husband, and his company known as Alice's Home. In early 1998, Childcraft negotiated a license for one of Alice's Home's products known as the Extra Wide Language Easel,

A116. Childcraft prepared and then executed a license agreement with Alice's Home for the Extra Wide Language Easel  Childcraft originally drafted the agreement for signature by Alice Wedd on behalf of Alice's Home.  The license agreement did not include or cover any other Alice's Home products, concepts, or ideas.

7.    Alice Wedd continued to successfully and productively work for Childcraft until 2003  Early that year, in January, Alice's supervisor was changed to James Green.

8.    Mr  Green would often consume alcohol during work hours.  At times during work hours, he was intoxicated or hung over.  He would schedule meetings which involved dinner and/or drinks at public restaurants and bars  Alice objected to this and complained to upper management about the obvious problem with Mr. Green's drinking and its effect on the business as well as the danger which it presented to both Alice and the public at large.  Mr. Green was also belligerent and arrogant to Alice, at times threatening to "spank" her while making these and similarly sexually harassing comments, and was critical of her work for no apparent reason.  Mr. Green instituted a new territory for Alice, thereby cutting her work and customer contact, which in turn reduced her ability to make a living and conduct business.  Alice worked on a commission basis with a draw

9.    Soon after Alice registered complaints about Mr. Green's drinking problems while on the job, he harassed her more aggressively  He threatened her, and was abusive and rude on a frequent basis.

10    Green and/or others with Childcraft created a ruse in May 2003 to terminate Alice from her sales position with the company  They supposedly learned in May 2003 that Alice was working for Alice's Home and used that as an excuse to terminate her from the company.  The

3

defendants fully understood and were aware of Alice's relationship to Alice's Home at all times during her employment. Her last day was May 16, 2003 when she was fired for this alleged reason.

11.    Green and Childcraft have told third parties that Alice was terminated because of an alleged conflict of interest which is a false statement. This allegation has been repeated on several occasions, both privately and publicly to third parties.

12.    Alice's Home is and was a manufacturer and made easels for Childcraft even before the April 1998 license agreement was executed. This continued throughout the time that Alice worked for Childcraft.

### Count One - Trade Secrets Misappropriation and Injunction (Childcraft)

13.    Plaintiffs reallege the allegations contained in paragraphs 1 through 12 above as if fully restated herein.

14.    Defendant Childcraft's actions and omissions, as more fully described above, constitute violations of Ohio's Uniform Trade Secrets' Act codified at Ohio Revised Code §§1333.61 *et seq.* as well as Ohio common law and federal law. Childcraft misappropriated and used trade secrets obtained from Alice's Home without its consent or knowledge and used improper means to obtain the trade secrets. Childcraft improperly used the information by designing, manufacturing, and marketing similar easels and other products which it knew were the property of Alice's Home and not covered by a license agreement.

15.    Alice's Home has suffered extensive damages as a result of the misappropriation in an amount as yet undetermined, but believed to exceed $1,000,000 in lost profits and related damages as compensatory damages under Ohio Rev. Code §1333.63(A), punitive damages of

4

$750,000.00 under Ohio Rev. Code §1333.63(C), reasonable attorney fees under Ohio Rev. Code §1333.64(C), and is entitled to an immediate and permanent injunction necessary to stop present and future misappropriation under Ohio Rev. Code §1333.62.

### Count Two - Unfair Competition

16.    Plaintiffs reallege the allegations contained in paragraphs 1 through 15 above as if fully restated herein.

17.    Defendants' actions and omissions in misleading the plaintiffs into thinking that their interest in a single licensed product was the extent of the relationship when in fact they intended to and misappropriated the design, idea, concept of the easel even though it was actually the property, product and design of Alice's Home, and the method and manner in which Childcraft took key competitive information under false pretenses, constitutes unfair competition.

18.    Childcraft's business practices in deceiving and misleading the plaintiff first to obtain the product license, and then using the license to extract and use additional information, constitute clear violations of commercial ethics normally associated with business transactions. Alice's Home has been damaged as set forth above.

### Count Three - Wrongful Discharge and Breach of Contract

19    Plaintiffs reallege the allegations contained in paragraphs 1 through 18 above as if fully restated herein.

20.    Alice Wedd was wrongfully discharged from her employment in violation with her express and/or implied agreement with Childcraft. Childcraft maintained that she was discharged due to a conflict of interest which the company knew did not exist, nor served as a legitimate

5

reason for discharge under company policy and the express and/or implied employment agreement with Alice.

21.    Alice was actually discharged in retaliation because she complained about a workplace safety issue concerning her direct supervisor James Green.   Mr  Green's drinking posed a serious safety issue to both the public and Alice Wedd, who at times would be required to travel with Mr. Green in his vehicle or be on the road in the same vicinity when he would operate a motor vehicle while intoxicated.

### Count Four - Interference with Existing and Prospective Contractual Relationships and Slander

22.    Plaintiffs reallege the allegations contained in paragraphs 1 through 21 above as if fully restated herein.

23.    Once terminated, Alice tried to locate other employment in the industry.  The defendants falsely told third parties and prospective employers that Alice was terminated due to a conflict of interest in breach of a known company policy.  As a result of the defendants' actions and false statements, Alice was unable to locate and maintain comparable employment.  Potential employers and customers have been falsely advised that Childcraft discharged Alice due to a conflict of interest or some such reason.    As a direct and proximate result, Alice Wedd and Alice's Home have both been damaged to an extent to be proven at trial.

24.    Alice's Home has also suffered damages in that it has lost sales and potential relationships with customers due to the false statements made by the defendants and, as a direct and proximate result, has also been damaged as set forth above.

6

### Count Seven – Unjust Enrichment

25.    Plaintiffs reallege the allegations contained in paragraphs 1 through 24 above as if fully restated herein.

26.    Defendants' retention of the benefits obtained by converting Alice's Home's confidential business and product information to their benefit and profit under the circumstances is unfair and unjust  Defendants are liable to Alice's Home for their profits, return of royalties and any other economic benefits improperly taken, and an accounting of their activities, profits, and sales resulting from the illegal retention of the business and product information

**WHEREFORE,** plaintiffs Alice Wedd and Alice's Home demand judgment against defendants Childcraft Education Corp. and James Green, jointly and severally, for compensatory damages in the amount of $1,000,000 as to all counts of the complaint; treble damages where applicable; punitive damages in the amount of $750,000; an accounting of all activities, sales, profits, and proceeds relative to the sale and conversion of plaintiff Alice's Home's business and product information and the products sold by Childcraft utilizing the information; temporary, preliminary and permanent injunctions enjoining defendants' illegal use of the information and any benefits therefrom; interest at the statutory rate from the time defendants first converted plaintiff's property; costs of this action; reasonable attorney fees; and whatever further relief this court deems just and appropriate.

James P  Connors, Esq. (0034651)
**LAW OFFICES OF JAMES P. CONNORS**
221 South High Street
Columbus, Ohio  43215
(614) 221-6868
FAX (614) 221-6889
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a jury of eight (8) for all triable jury issues contained herein and any claim or defense asserted in this action.

*Counsel for Plaintiffs*

8

Exhibit 2

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

| | |
|---|---|
| **ALICE'S HOME,** *et al.,* | ) Case No. 05CVH-05-5417 |
| | ) |
| Plaintiffs, | ) JUDGE JULIE M. LYNCH |
| | ) |
| v. | ) |
| | ) |
| **CHILDCRAFT EDUCATION CORP.** *et* | ) |
| *al.,* | ) **ANSWER OF DEFENDANTS** |
| | ) **CHILDCRAFT EDUCATION** |
| | ) **CORPOPRATION AND JAMES GREEN** |
| Defendants. | ) |

For their Answer to the Complaint filed by Alice's Home and Alice Wedd (collectively "Plaintiffs"), Defendants Childcraft Education Corporation ("Childcraft") and James Green (collectively, "Defendants") admit, deny, and aver as follows:[1]

## FIRST DEFENSE

### Nature of the Action

1. Defendants state that the first and third sentences in paragraph 2 state legal conclusions to which no answer is required, but, to the extent an answer is required, Defendants deny the first sentence of paragraph 2. Defendants deny the remaining allegations in paragraph 2.

### Jurisdiction, Venue and the Parties

2. Defendants deny the allegations in paragraph 2 because they lack sufficient knowledge or information to form a belief as to their truthfulness.

3. Defendants admit the allegations in paragraph 3.

4. Defendants deny the allegations in paragraph 4.

---

[1] Defendants have filed (1) a motion to dismiss or stay Counts One, Two and Seven pursuant to Ohio R. Civ. P. 12(B)(3); (2) a motion to dismiss Counts Two and Three pursuant to Ohio R. Civ. P. 12(B)(6); and a motion to strike the damages provisions of the Complaint pursuant to Ohio R. Civ. P. 12(F). In the event any of those motions are not granted, Defendants will file and serve their answer as appropriate under Ohio R. Civ. P. 12(A)(2).

### Facts Common to All Claims

5.    Childcraft admits the first sentence of paragraph 5, but denies the second sentence in paragraph 5. James Green denies the allegations in paragraph 5 because he lacks sufficient knowledge or information to form a belief as to their truthfulness.

6.    Childcraft admits that the first sentence in paragraph 6 only insofar as it relates to the "business" "conducted" pursuant to the License Agreement between Childcraft and Alice's Home. Childcraft admits it was aware that Alice Wedd was married to her husband, William Wedd. Childcraft admits that in 1998 it was granted a license for the Extra Wide Language Easel. Childcraft denies all remaining allegations in paragraph 6. James Green denies the allegations in paragraph 6 because he lacks sufficient knowledge or information to form a belief as to their truthfulness.

7.    Defendants admit that James Green became Ms. Wedd's supervisor in or about January 2003, but Defendants deny the remaining allegations in paragraph 7.

8.    Defendants admit that Ms. Wedd worked on a commission basis with a draw, but Defendants deny all other allegations in paragraph 8.

9.    Defendants deny the allegations in paragraph 9.

10.    Defendants aver that in or about May 2003 they learned for the first time that Ms. Wedd was working for Alice's Home, and defendants aver that, as late as May 13, 2003, Ms. Wedd stated that she was not involved with Alice's Home. Defendants admit that Ms. Wedd's employment was terminated on May 16, 2003. Defendants deny all other allegations in paragraph 10.

11.    Defendants deny the allegations in paragraph 11.

12.    Defendants deny the allegations in paragraph 12.

2

### Count One—Trade Secrets Misappropriation and Injunction (Childcraft)

13. Answering paragraphs 13-15, Defendants state that those paragraphs of the Complaint are the subject of Defendants' motion to dismiss or stay pursuant to Ohio R. Civ. P. 12(B)(3). If necessary, Defendants will file and serve their answer as appropriate under Ohio R. Civ. P. 12(A)(2).

### Count Two—Unfair Competition

14. Answering paragraphs 16-18, Defendants state that those paragraphs of the Complaint are the subject of Defendants' motion to dismiss pursuant to Ohio R. Civ. P. 12(B)(6) and their motion to dismiss or stay pursuant to Ohio R. Civ. P. 12(B)(3). If necessary, Defendants will file and serve their answer as appropriate under Ohio R. Civ. P. 12(A)(2).

### Count Three—Wrongful Discharge and Breach of Contract

15. Answering paragraphs 19-21, Defendants state that those paragraphs of the Complaint are the subject of Defendants' motion to dismiss pursuant to Ohio R. Civ. P. 12(B)(6). If necessary, Defendants will file and serve their answer as appropriate under Ohio R. Civ. P. 12(A)(2).

### Count Four—Interference with Existing and Prospective Contractual Relationships and Slander

16. Answering paragraph 22, Defendants restate and incorporate their answers in the preceding paragraphs as if fully rewritten herein.

17. Defendants deny the allegations in paragraph 23.

18. Defendants deny the allegations in paragraph 24.

3

### Count Seven—Unjust Enrichment[2]

19.    Answering paragraphs 25-26, Defendants state that those paragraphs of the Complaint are the subject of Defendants' motion to dismiss or stay pursuant to Ohio R. Civ. P. 12(B)(3).  If necessary, Defendants will file and serve their answer as appropriate under Ohio R. Civ. P. 12(A)(2).

### SECOND DEFENSE

20.    Defendants deny any and all other allegations in the Complaint not specifically admitted.

### THIRD DEFENSE

21.    Plaintiffs are precluded from recovery to the extent their own misfeasance, nonfeasance, actions or inactions caused the injuries or damages alleged in the Complaint.

### FOURTH DEFENSE

22.    All actions taken by Defendants with respect to Alice Wedd were taken in good faith, without intent to discriminate, and for legitimate, nondiscriminatory reasons other than protected conduct.

### FIFTH DEFENSE

23.    Defendants had legitimate business reasons for terminating Alice Wedd's employment.

### SIXTH DEFENSE

24.    Alice Wedd's employment was terminated for good cause.

---

[2] There are no Counts "Five" or "Six."

4

## SEVENTH DEFENSE

25.    Any statements made by Defendants regarding Alice Wedd's employment were true.

## EIGHTH DEFENSE

26.    All conduct of Defendants is privileged.

## NINTH DEFENSE

27.    Defendants' actions were privileged acts of competition, were taken in good faith, were not taken for improper purposes, and/or were not taken with intent to injure or destroy, financially or otherwise, Plaintiffs.

## TENTH DEFENSE

28.    Plaintiffs cannot prove that they had prospective contractual relationships with any third party.

## ELEVENTH DEFENSE

29.    Plaintiffs are not entitled, in whole or in part, to punitive damages, court costs, or attorney's fees.

## TWELFTH DEFENSE

30.    Plaintiffs' claims are barred by the doctrines of estoppel and unclean hands.

## THIRTEENTH DEFENSE

31.    The claims alleged in the Complaint are barred by Plaintiffs' own breaches of contract.

## FOURTEENTH DEFENSE

32.    Plaintiffs lack standing to bring some or all of the claims asserted in the Complaint.

### FIFTEENTH DEFENSE

33.    The Complaint should be dismissed, in whole or in part, due to improper venue.

### SIXTEENTH DEFENSE

34.    Plaintiffs' Complaint fails to state any claims upon which relief can be granted.

### SEVENTEENTH DEFENSE

35.    Defendants are without knowledge or information sufficient to form a belief as to whether they may have additional, as yet unstated, defenses available to them.  Defendants therefore reserve the right to raise additional affirmative defenses if and when they become aware of them during the course of this case or discovery.

### DEMAND FOR RELIEF

WHEREFORE, Defendants Childcraft Education Corporation and James Green demand that this Court enter judgment in their favor, dismiss Plaintiffs' Complaint with prejudice, award Defendants their costs, expenses and attorneys' fees incurred herein, and grant such other and further relief as this Court deems just and equitable.

Respectfully submitted,

Mark S. Floyd (0024756)
Mark.Floyd@ThompsonHine.com
Christopher R. Johnson  (0072995)
Chris.Johnson@ThompsonHine.com
Mark A. Noel  (0076788)
Mark.Noel@ThompsonHine.com
Thompson Hine, LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
(216) 566-5500
(216) 566-5800 (Facsimile)
*Attorneys for Defendants*

6

## CERTIFICATE OF SERVICE

On this __21st__ day of July, 2005, a copy of the foregoing **Answer** was served by FedEx

overnight, postage prepaid on the following:

> James P. Connors
> Law Offices of James P. Connors
> 221 South High Street
> Columbus, OH 43215
>
> Counsel for Plaintiffs

_____

*One of the Attorneys for Defendants*

Exhibit 3

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

Alice's Home, *et al.,*                          :

             **Plaintiffs,**                    :        Case No: 05CVH-05-5417

                            :

**vs.**                                          :        Judge Julie M. Lynch

                            :

Childcraft Education Corp., *et al.,*            :

                            :

             **Defendants.**                   :

## FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
### (Jury Demand Endorsed Hereon)

      Plaintiffs Alice's Home and Alice J. Wedd, for their complaint against the defendants,

state the following:

## I.    Nature of the Action.

      Plaintiff Alice's Home brings this action to recover damages for, and to enjoin defendants

from, the unlawful conversion and misappropriation of its trade secrets and proprietary and

confidential business information and for breach of contract. Without privilege or consent, and

in violation of a license agreement, defendants unlawfully obtained plaintiff's trade secrets and

proprietary confidential business information and used it to their economic advantage.

      Plaintiff Alice Wedd asserts claims for wrongful discharge and breach of contract, along

with Alice's Home, assert claims for slander and tortious interference with business relationships

against Childcraft and James Green. Alice's Home asserts a claim for breach of the license

agreement against Childcraft as well.

## II.    Jurisdiction, Venue and the Parties.

      2.    Plaintiff Alice's Home is a sole proprietorship owned and operated by William E.

Wedd with its principal place of business at the above address, where it has resided at all times

pertinent to the claims being made in this action. Plaintiff Alice Wedd was also a Franklin County resident at all times material to the claims.

3. Defendant Childcraft Education Corp. ("Childcraft") is a New York corporation which conducts business in Ohio as a foreign corporation with its principal place of business at the address listed above. Defendant James Green was Alice Wedd's direct supervisor at the time of her discharge from employment with Childcraft and resides at the above address

4. This court has both personal and subject matter jurisdiction over the parties and venue is proper pursuant to Rule 3(B) of the Ohio Rules of Civil Procedure.

### III.    Facts Common to All Claims.

5. In March 1995, Alice Wedd became employed by Childcraft as a sales representative. At that time, Childcraft was aware that Alice and her husband William worked in the early childhood educational products industry and had been involved with the sole proprietorship known as Alice's Home which conducted business from the above address.

6. Alice's Home and Childcraft conducted business with each other while Alice was employed with Childcraft. The defendants were obviously aware of Alice's relationship both to William Wedd, her husband, and his company known as Alice's Home.

7. In early 1998, Childcraft negotiated a license for one of Alice's Home's products known as the Extra Wide Language Easel, A116. Childcraft prepared and then executed a license agreement with Alice's Home for the A116 Extra Wide Language Easel which was depicted as Exhibit A to the license agreement, a true and accurate copy of which is attached as Exhibit A to the First Amended Complaint. Childcraft originally drafted the agreement for signature by Alice

2

Wedd on behalf of Alice's Home. The license agreement did not include or cover any other Alice's Home products, concepts, or ideas.

8.    Alice Wedd continued to successfully and productively work for Childcraft until 2003. Early that year, in January, Alice's supervisor was changed to James Green.

9    Mr. Green would often consume alcohol during work hours. At times during work hours, he was intoxicated or hung over. He would schedule meetings which involved dinner and/or drinks at public restaurants and bars. Alice objected to this and complained to upper management about the obvious problem with Mr. Green's drinking and its effect on the business as well as the danger which it presented to both Alice and the public at large.

10    Mr Green was also belligerent and arrogant to Alice, at times threatening to "spank" her while making these and similarly sexually harassing comments, and was critical of her work for no apparent reason. Mr. Green instituted a new territory for Alice, thereby cutting her work and customer contact, which in turn reduced her ability to make a living and conduct business. Alice worked on a commission basis with a draw.

11.    Soon after Alice registered complaints about Mr. Green's drinking problems while on the job, he harassed her more aggressively. He threatened her, and was abusive and rude on a frequent basis.

12.    Mr. Green and/or others with Childcraft created a ruse in May 2003 to terminate Alice from her sales position with the company. They supposedly learned in May 2003 that Alice was working for Alice's Home and used that as an excuse to terminate her from the company. The defendants fully understood and were aware of Alice's relationship to Alice's Home at all

3

times before and during her employment. Her last day was May 16, 2003 when she was fired for this alleged reason.

13      Mr. Green and Childcraft have told third parties that Alice was terminated because of an alleged conflict of interest which is a false statement. This allegation has been repeated on several occasions, both privately and publicly to third parties.

14.     Alice's Home is and was a manufacturer and made easels for Childcraft even before the April 1998 license agreement was executed. This continued throughout the time that Alice worked for Childcraft.

### Count One - Trade Secrets Misappropriation and Injunction (Childcraft)

15      Plaintiffs reallege the allegations contained in paragraphs 1 through 14 above as if fully restated herein.

16.     Defendant Childcraft's actions and omissions, as more fully described above, constitute violations of Ohio's Uniform Trade Secrets' Act which is codified at Ohio Revised Code §§1333.61 *et seq*, as well as Ohio common law and federal law. Childcraft misappropriated and used trade secrets obtained from Alice's Home without its consent or knowledge, and used improper means to obtain the trade secrets. Childcraft improperly used the information by designing, manufacturing, and marketing similar easels and other products which it knew were the property of Alice's Home, and not covered by a license agreement.

17.     Alice's Home has suffered extensive damages as a result of the misappropriation in an amount as yet undetermined, but believed to exceed $1,000,000 in lost profits and related damages as compensatory damages under Ohio Rev. Code §1333.63(A), punitive damages of $750,000.00 under Ohio Rev. Code §1333.63(C), reasonable attorney fees under Ohio Rev. Code

4

§1333.64(C), and is entitled to an immediate and permanent injunction necessary to stop present and future misappropriation under Ohio Rev. Code §1333.62.

### Count Two - Unfair Competition

18.    Plaintiffs reallege the allegations contained in paragraphs 1 through 17 above as if fully restated herein.

19.    Defendants' actions and omissions in misleading the plaintiffs into thinking that their interest in a single licensed product was the extent of the relationship when in fact they intended to and misappropriated the design, idea, concept of the easel and represented it as theirs even though it was actually the property, product and design of Alice's Home, and the method and manner in which Childcraft took key competitive information under false pretenses, constitutes unfair competition.

20.    Childcraft's business practices in deceiving and misleading the plaintiff first to obtain the product license, and then using the license to extract and use additional information, constitute clear violations of commercial ethics normally associated with business transactions. Alice's Home has been damaged as set forth above in an amount exceeding $25,000 to be proven at trial.

### Count Three - Wrongful Discharge and Breach of Contract (Childcraft)

21    Plaintiffs reallege the allegations contained in paragraphs 1 through 20 above as if fully restated herein.

22.    Alice Wedd was wrongfully discharged from her employment in violation with her express and/or implied agreement with Childcraft. Childcraft maintained that she was discharged due to a conflict of interest which the company knew did not exist, nor served as a legitimate

reason for discharge under company policy and the express and/or implied employment agreement with Alice. Alice was an at will employee at the time of her discharge.

23.    Alice was actually discharged in retaliation because she complained about a workplace safety issue concerning her direct supervisor James Green. Mr Green's drinking posed a serious safety issue to both the public and Alice Wedd, who at times would be required to travel with Mr. Green in his vehicle or be on the road in the same vicinity when he would operate a motor vehicle while intoxicated.

24.    As a direct and proximate result of Childcraft's actions described more fully above, Alice Wedd has suffered extensive damages exceeding $25,000 to be proven at trial.

### Count Four - Breach of Contract From License Agreement (Childcraft)

25    Plaintiffs reallege the allegations contained in paragraphs 1 through 24 above as if fully restated herein.

26.    As noted above, Alice's Home and Childcraft executed a license agreement effective as of April 1, 1998, a copy of which is attached as Exhibit A

27.    Alice's Home has honored all its obligations under the agreement. Childcraft received the license for the A116 Extra Wide Language Easel which is the subject of the license agreement. Childcraft has breached the license agreement by, among other ways, refusing and failing to properly pay royalties, provide proper accounting of the royalties and covered product sales, and in failing and refusing to pay attorney fees and expenses, all of which have resulted in significant damages to the plaintiffs.

28    Childcraft has paid royalties to Alice's Home since the contract was executed through the present  Neither party to the license agreement has terminated that agreement.

6

29.    The royalties due to be paid by Childcraft under the agreement are set forth at ¶3(a) and are to be paid for any "covered product" under the agreement as that term is defined at page 2 of the agreement to include the "Product" being the A116 easel and any other product similar to the A116 regardless of design features.

30    Childcraft has breached the royalty provision of the agreement which has resulted in substantial damages to Alice's Home which are believed to exceed $1,000,000 and will continue to accrue into the future.

31.    Childcraft was also made aware of its violations of the license agreement, yet refused to correct its violations of the agreement or to pay royalties as required under the agreement

32.    Childcraft is also obligated to pay reasonable attorney fees and expenses pursuant to ¶5(a) of the agreement.  Childcraft refuses to pay these fees and expenses which is another violation of the agreement which has resulted in substantial damages to Alice's Home exceeding or expected to exceed $500,000.

33.    Childcraft instituted and filed an action in the United States District Court for the District of Delaware on July 1, 2005 against Alice's Home, among others, and has refused to pay Alice's Home's attorney fees and expenses related to the litigation including that case.

## Count Five - Interference with Existing and Prospective Contractual Relationships and Slander

34.    Plaintiffs reallege the allegations contained in paragraphs 1 through 33 above as if fully restated herein.

35.    Once terminated from her employment by Childcraft, Alice tried to locate other employment in the industry.  The defendants falsely told third parties and prospective employers that Alice was terminated due to a conflict of interest in breach of a known company policy   As a result of the defendants' actions and false statements, Alice was unable to locate and maintain comparable employment.

36.    Potential employers and customers have been falsely advised by Mr. Green, Childcraft, and/or others on their behalf, that Childcraft discharged Alice due to a conflict of interest or some such false reason   As a direct and proximate result, Alice Wedd and Alice's Home have both been damaged to an extent to be proven at trial.

37.    Alice's Home and Alice Wedd have also suffered damages in that both have lost sales and potential relationships with customers or employers due to the false statements made by the defendants and, as a direct and proximate result, have also been damaged as set forth above.

### Count Six - Unjust Enrichment

38.    Plaintiffs reallege the allegations contained in paragraphs 1 through 37 above as if fully restated herein.

39.    Defendants' retention of the benefits obtained by converting Alice's Home's confidential business and product information to their benefit and profit under the circumstances is unfair and unjust   Defendants are liable to Alice's Home for their profits, return of royalties and any other economic benefits improperly taken, and an accounting of their activities, profits, and sales resulting from the illegal retention of the business and product information

**WHEREFORE**, plaintiffs Alice Wedd and Alice's Home demand judgment against defendants Childcraft Education Corp  and James Green, jointly and severally, for compensatory

8

damages in an amount exceeding $1,500,000 as to all counts of the complaint; treble damages where applicable; punitive damages in the amount of $1,000,000; an accounting of all activities, sales, profits, and proceeds relative to the sale and conversion of plaintiff Alice's Home's business and product information and the products sold by Childcraft utilizing the information; temporary, preliminary and permanent injunctions enjoining defendants' illegal use of the information and any benefits therefrom; interest at the statutory rate from the time defendants first converted plaintiff's property and interest on all unpaid royalties from the time that said royalties were due; costs of this action; reasonable attorney fees and expenses; and whatever further relief this court deems just and appropriate.

Respectfully submitted,

James P. Connors, Esq. (0034651)
**LAW OFFICES OF JAMES P. CONNORS**
221 South High Street
Columbus, Ohio 43215
(614) 221-6868
FAX (614) 221-6889
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a jury of eight (8) for all triable jury issues contained herein and any claim or defense asserted in this action.

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served upon counsel for defendants, by regular U S  mail, this 30th day of August, 2005.

*Counsel for Plaintiffs*

9

346 197

## LICENSE AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement"), is made and entered this 1st day of April 1998, by and between ALICE'S HOME: TOOLS FOR TEACHERS, a sole proprietorship duly organized and existing under and by virtue of the laws of the State of Ohio, whose address is 2784 Shady Ridge Drive, Columbus, Ohio 43231 ("Licensor"), and CHILDCRAFT EDUCATION CORP., a New York Corporation duly organized and existing under and by virtue of the laws of the State of New York, whose address is 2920 Old Tree Drive, Lancaster, PA 17603 (" Licensee").

### BACKGROUND

Licensor is the owner of all rights, titles and interests in and to the Extra Wide Language Easel which is depicted in Exhibit "A" to this Agreement (the "Product"). Licensee desires to obtain an exclusive license under the Intellectual Property Rights to market, offer for sale, sell and manufacture the Product. For the purpose of this Agreement the term "Intellectual Property Rights" shall mean any rights which the Licensor shall have related to any United States or foreign patent to which the Licensor has title as of the date of this Agreement, as well as any application for a United States or foreign patent made by the Licensor or rights for which an application could be made related to the Product (the "Patent Rights") or any United States or foreign copyright owned by the Licensor as of the date of this Agreement, including any registration of copyrights, in the United States Copyright Office or the equivalent thereof in any foreign county, as well as any application for a United States or foreign copyright registration made by the Licensor related to the Product as well as any trademarks registered in the United States Patent and Trademark Office or the equivalent thereof in any state of the United States or in any foreign country, and (ii) all of the unregistered Trademarks, that the Licensor now owns or uses in connection with the Product ("Trademark"). Subject to and in accordance with the terms of this Agreement, Licensor is willing to grant such license.

### PROVISIONS

Therefore, in exchange for the covenants, rights, and duties as herein described, the adequacy of which is acknowledged by all parties hereto, Licensor and Licensee agree as follows:

1.    Certain Definitions. In addition to other terms defined elsewhere in this Agreement, the following terms shall have the following meanings, respectively (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

PLAINTIFF'S
EXHIBIT
A

1

"Covered Product" shall mean the Product and any other product (regardless of the dimensions of such other product) designed, marketed, offered for sale, sold, assembled or manufactured by Licensee which is substantially similar to the Product in its design features.

"Net Invoice Price" shall mean the gross selling price of each Covered Product sold by or for Licensee, less any of the following (but only insofar as they pertain to the sale of any such Covered Product by or for Licensee and are included in such Covered Product's gross selling price): (a) sales use or excise taxes paid directly or indirectly by Licensee; and (b) any shipping costs actually paid and separately itemized by Licensee. (c) normal and customary trade discounts, returns and allowances actually allowed thereon.

"Person" shall mean any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof).

2.    Grant of License.  Subject to the terms and conditions set forth in this Agreement, Licensor hereby grants to Licensee an exclusive license under the Intellectual Property Rights: (a) to market, offer for sale, sell and manufacture the Product: and (b) to use the Trademark in connection with the marketing and sale of the Product (the "License").  Licensee shall not have the right to grant sub-licenses under the License without prior written consent of Licensor.

3.    Royalties.

a.    Licensee shall pay Licensor semi-annually as described in Section 3(c) a royalty equal to eight percent (8%) of the Net Invoice Price for each Covered Product sold by or for Licensee and assembled, used, leased or sold anywhere in the world.

b.    The royalty described in subparagraph 3(a) of this Agreement shall accrue when the Licensee shall receive payment for the sale of a Covered Product. Receipt of payment for the sale of a Covered Product shall be deemed to upon the actual receipt of currently available funds for such sale by the Licensee.

c.    The accounting period for payment of royalties shall be on a calendar basis for the respective periods ending June 30 and December 31 of each year. Within 30 days of the end of each accounting period, Licensee shall furnish Licensor with

2

a written statement (certified as true and correct by an authorized officer of Licensee) of the total Net Invoice Price of all Covered Products sold in the preceding accounting period, setting forth the essential information concerning the sales by or for Licensee of all Covered Products subject to royalty and upon which royalty is calculated. Such information shall include such information as is reasonably necessary to enable Licensor to verify the accuracy of the royalty calculation. Payment of the royalties described in subparagraph 3(a) of this Agreement shall be due on a monthly basis and shall be payable on the tenth (10th) day of the month following the month of accrual of said royalties. The licensee shall include with each payment the written statement required to be furnished by Licensee pursuant to the terms of this Section 3(c).

      d.    Licensee agrees that it will at all times keep complete, true and correct books of account containing a current record of sales and other data in sufficient detail to enable the royalties payable under this Agreement to be computed and verified. Licensee further agrees to permit Licensor, its duly authorized agent or an independent certified or other public accountant selected by Licensor at the sole expense of the Licensor to have access for inspection and/or to make copies of such books of account at reasonable intervals during Licensee's normal business hours. The cost of any such audit shall be borne by Licensor. In the event that any audit of Licensee's books of account results in a determination that Licensee has paid less than the amount required under this Agreement, Licensee shall immediately pay the additional amount due.

    4.    <u>Relationship Between the Parties</u>.  Licensor and Licensee are both independent contractors and not joint ventures with, or partner, agents or employees of, each other and neither Licensee nor Licensor shall in any respect by act or omission represent or imply, or permit any representation or implication by the act of omission of any other Person, that it is a joint venturer with, or the partner, agent or employee of, the other or in any respect authorized or empowered to act on behalf of the other, except as specifically provided under the terms of this Agreement.

    5.    <u>Representations and Warranties</u>.  Licensee and Licensor each represent and warrant to each other that:  (a) it is a corporation, partnership, sole proprietorship or limited liability company as described in the preamble to this agreement duly organized, validly existing and in good standing under the laws of the state of its incorporation, organization or formation; (b) it has the necessary power and authority to execute, deliver and perform its obligations under this Agreement, and all such action has been duly and validly authorized by all necessary proceedings on its part; and (c) this Agreement has been duly executed and delivered by it and constitutes the legal, valid and binding obligation of it enforceable against it in accordance with its terms.  Licensor also represents and warrants to Licensee that to the best of Licensor's actual knowledge, the

3

Product does not infringe the patent, trademark or copyright rights of any Person. Further the Licensor to the best of its knowledge warrants and represents to the Licensee that:

    (i) Licensor is the sole owner of the Intellectual Property Rights related to and necessary for the Production and marketing of the Product.

    (ii) Licensor has the full power and authority to make this Agreement and to grant hereunder, and has not previously assigned, transferred or otherwise encumbered the same.

    (iii) The Intellectual Property Rights of the Product are not in the public domain.

    (iv) The Product does not infringe any statutory or common law Intellectual Property Right of a party other than the Licensor.

    (a) Licensee will indemnify and hold Licensor harmless from any loss, costs or damages, including reasonable attorneys' fees, in connection with any claim, action or proceeding inconsistent with, or arising out of breach or alleged breach of, Licensee's warranties, representations and agreements contained in this Agreement. The Licensor may also defend any such claim, action or proceeding. Licensor shall have the right to participate in the defense at Licensor's own expense with counsel of Licensor's own choosing. Any settlement of a claim, action or proceeding as to which this indemnity applies shall be subject to Licensor's approval, not to be withheld unreasonably.

    (b) The warranties, representations and indemnity by Licensor and Licensee herein shall survive termination of this Agreement for any reason.

    (c) Licensee shall, at its own cost and expense, take such legal action, in Licensor's name if necessary, as may be required to restrain any infringement of any of the Intellectual Property Rights of the Licensor related to the Product or to seek damages therefor, but shall not be, liable to Licensor for failure to take such legal steps. If Licensor elects to join in such proceeding the expenses and recovery shall be shared equally. If Licensee proceeds without Licensor's participation, any recovery shall belong to Licensee. If Licensee does not bring such action, Licensor may do so in Licensor's own name and at Licensor's own cost and expense and money damages recovered by Licensor for any infringement shall belong to Licensor.

    (d) Licensee may, in its reasonable discretion, withhold its reasonable estimate of the total damages and expenses (including reasonable attorneys' fees) from sums otherwise payable to Licensor pursuant to this or any other agreement between Licensor and Licensee, and to apply such sums to payment of such damages (including but not

4

limited to lost profits of the Licensee) and expenses. Notwithstanding the foregoing, in the event that Licensee shall have been notified of a claim or demand, if said claim or demand shall not result in a suit or proceeding within one year of notice to Licensee, and Licensee shall have incurred no costs, Licensee shall release the withheld funds, except that (i) Licensee may continue to withhold said funds if Licensor has a reasonable basis to believe that a suit or proceeding shall be commenced within a reasonable time thereafter, and (ii) Licensee may again commence withholding funds should a suit or proceeding be commenced after any release of withheld funds.

6. Duration and Termination.

a. Unless otherwise terminated as hereinafter set forth, this Agreement and License granted in this Agreement shall continue in force until two (2) years after December 31 of the year of the last publication or catalog in which the Product is included, provided however, that the term of this Agreement and the License granted hereunder shall automatically renew and extend for additional one-year periods unless and until either party shall have provided the other party with at least 12 months' written notice of its intention to terminate this Agreement as of the end of the current term.

b. Notwithstanding anything to the contrary contained in this Agreement, if Licensee shall at any time default in rendering any of the statements required under this Agreement, in paying any monies due under this Agreement, or in fulfilling any of the other obligations of this Agreement, and such default shall not be cured within 30 days after notice thereof is given by Licensor to Licensee, Licensor shall have the right immediately to terminate this Agreement by giving notice of termination to Licensee, such termination being effective upon Licensee's receipt of such notice. Licensee shall have the right to cure any such default up to, but not after, the giving of such notice of termination.

c. Except as provided in paragraph 6 (a) this Agreement, upon the occurrence of any of the following events, either party shall have the right immediately to terminate this Agreement by giving written notice of termination to the other party, such termination being effective upon such party's receipt of such notice and subject to paragraph 6 (a) of this Agreement: (i) the dissolution or liquidation of such party; (ii) the insolvency or bankruptcy of such party, whether voluntary or involuntary, or (iii) the death of an individual Licensor.

d. The waiver of any default under this Agreement by either party shall not constitute a waiver of the right to terminate this Agreement for any subsequent or like default, and the exercise of the right of termination shall not impose any liability by

reason of termination nor have the effect of waiving any damages to which such party might otherwise be entitled.

    c.    The termination of this Agreement for any cause outlined in this paragraph 6 shall in no manner interfere with, affect or prevent the collection by Licensor of any and all sums of money due to it under this Agreement

    7.    Duties Upon Termination. Upon termination of this Agreement pursuant to paragraph 6 of the Agreement, Licensee immediately shall: (a) discontinue any and all use of trademarks (including, without limitation, the Trademark), trade names or marks owned or controlled by Licensor or any colorable imitation therefore; (b) refrain from doing anything which would indicate that Licensee is associated or working with Licensor; (c) refrain from marketing the Product or any other Product which infringes on any of the Patent Rights; and (d) return to Licensor all proprietary and confidential material provided to Licensee pursuant to the terms of this Agreement, including all copies, records and representations thereof. Notwithstanding the foregoing sentence, Licensee shall have the right to dispose of any inventory of Covered Products existing on the date of termination, in the regular course of its business, and for this purpose the restrictions of (a), (b) and (c) of the foregoing sentence shall be deferred until six (6) months after the date of termination.

    8    Ownership of Intellectual Property Rights. Licensee hereby acknowledges and agrees that Licensor is the sole and exclusive owner of the Intellectual Property rights, and that nothing contained in this Agreement shall be construed to convey any right or proprietary interest in the Intellectual Property to Licensee, other than the License granted in this Agreement.

    9.    Negation of Warranty. Except as expressly provided in paragraph 5 of this Agreement, no representation or warranty has been or is made by Licensor that the Product or parts thereof may be manufactured, used or sold free of patent rights or proprietary rights of other Persons; it being understood that Licensor shall not be liable for any loss, damage or expense arising from any claim for patent or other proprietary right infringement upon the manufacture, use, lease or sale of the Product or the exercise of the License under this Agreement.

    10.    Compliance with Laws. Licensor and Licensee shall, during the term of this Agreement including any extension thereof, comply fully with all laws applicable to their respective obligations and activities under this Agreement

    11.    Entire Agreement; Amendment. This Agreement constitutes the entire and final agreement between the parties to this Agreement with respect to the subject matter

6

of this Agreement. This Agreement supersedes, in all respects, all other prior written or oral agreements between the parties to this Agreement relating to the subject matter of this Agreement. Neither this Agreement nor any of the provisions hereof can be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

12.    Severability. If any clause or provision of this Agreement is determined to be illegal, invalid or unenforceable under any present or future law by the final judgment of a court of competent jurisdiction, the remainder of this Agreement will not be affected thereby. It is the intention of the parties to this Agreement that if any such provision is held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible and be legal, valid and enforceable.

13.    Construction. Paragraphs or other headings contained in this Agreement are intended for ease in reference and are not intended to affect the meaning or interpretation of this Agreement. This Agreement may be executed in several counterparts, each of which will be deemed as original document, but all of which will constitute a single document.

14.    Notices. Any notice, payment, demand or communication required or permitted to be given by any provision of this Agreement shall be in writing and shall be deemed to have been given when delivered personally, nationally recognized express delivery service or by facsimile, receipt confirmed, to the party designated to receive such notice or on the date after the same is sent by certified mail, express delivery service, postage and charges prepaid, directed to the following addresses or to such other or additional address or to such other or additional address as any party might designate by written notice to the other parties:

If to Licensee:                          If to Licensor:
Childcraft Education Corp.               Alice's Home: Tools for Teachers
2920 Old Tree Drive                     2784 Shady Ridge Drive
Lancaster, PA 17603                     Columbus, OH 43231
Attn: Ronald Suchodolski                Attn: William E. Wedd
FAX: (717) 397-7586                    FAX: (614) 882-1879

15.    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of Licensor, its successors and assigns. This Agreement shall be binding upon and inure to the benefit of Licensee, but shall not be transferable or assignable by Licensee to any person or entity without the written consent of Licensor.

7

16.    Governing Law   This Agreement shall be governed by and construed, interpreted and enforced in accordance with the laws of Delaware.  Any disputes arising out of, in connection with or with respect to this Agreement, the subject matter hereof, the performance or non-performance of any obligation hereunder, or any of the transactions contemplated hereby shall be adjudicated in a court of competent civil jurisdiction sitting in the City of Wilmington, Delaware and nowhere else.  Each of the parties hereto hereby irrevocably submits to the jurisdiction of such court for the purposes of any suit, civil action or other proceeding arising out of, in connection with or with respect to this Agreement, the subject matter hereof, the performance or non-performance of any obligation hereunder, or any of the transactions contemplated hereby (collectively, "Suit").  Each of the parties hereto hereby waives and agrees not to assert by way of motion, as a defense or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum, or that the venue of such Suit is improper.

IN WITNESS WHEREOF, Licensor and Licensee have duly executed this Agreement on the day and year first above written.

ALICE'S HOME: TOOLS FOR TEACHERS

By: _____  4/6/98
    William E. Wedd

CHILDCRAFT EDUCATION CORP

By: _____  - 4/13/98
    Ronald Suchodolski
    President

8

NO GROOVES
IN LEDGE

2 3/8

3/4

17

15 1/4

1 3/4

3/8

APPROX 20 1/4

3/32

3/8

3/8

1/8

46 1/2

9

9

3

1 3/16

2 3/8

3/4    1

31 1/4

29 3/4

31 1/4

36

36 EASEL BOARD

31 1/4

ALL EASEL MATERIAL

LEDGE MATERIAL
SCREEN POCKETS

1

3/4

2 3/8

24 1/8 EASEL BOARD

ALICE — ORIGINAL

E 1774