# Attachments to Affidavit of Alice J. Wedd

34697

## LICENSE AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement"), is made and entered this 1st day of April 1998, by and between ALICE'S HOME: TOOLS FOR TEACHERS, a sole proprietorship duly organized and existing under and by virtue of the laws of the State of Ohio, whose address is 2784 Shady Ridge Drive, Columbus, Ohio 43231 ("Licensor"), and CHILDCRAFT EDUCATION CORP., a New York Corporation duly organized and existing under and by virtue of the laws of the State of New York, whose address is 2920 Old Tree Drive, Lancaster, PA 17603 (" Licensee").

## BACKGROUND

Licensor is the owner of all rights, titles and interests in and to the Extra Wide Language Easel which is depicted in Exhibit "A" to this Agreement (the "Product"). Licensee desires to obtain an exclusive license under the Intellectual Property Rights to market, offer for sale, sell and manufacture the Product. For the purpose of this Agreement the term "Intellectual Property Rights" shall mean any rights which the Licensor shall have related to any United States or foreign patent to which the Licensor has title as of the date of this Agreement, as well as any application for a United States or foreign patent made by the Licensor or rights for which an application could be made related to the Product (the "Patent Rights") or any United States or foreign copyright owned by the Licensor as of the date of this Agreement, including any registration of copyrights, in the United States Copyright Office or the equivalent thereof in any foreign county, as well as any application for a United States or foreign copyright registration made by the Licensor related to the Product as well as any trademarks registered in the United States Patent and Trademark Office or the equivalent thereof in any state of the United States or in any foreign country, and (ii) all of the unregistered Trademarks, that the Licensor now owns or uses in connection with the Product ("Trademark"). Subject to and in accordance with the terms of this Agreement, Licensor is willing to grant such license.

## PROVISIONS

Therefore, in exchange for the covenants, rights, and duties as herein described, the adequacy of which is acknowledged by all parties hereto, Licensor and Licensee agree as follows:

1.    Certain Definitions. In addition to other terms defined elsewhere in this Agreement, the following terms shall have the following meanings, respectively (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

1

"Covered Product" shall mean the Product and any other product (regardless of the dimensions of such other product) designed, marketed, offered for sale, sold, assembled or manufactured by Licensee which is substantially similar to the Product in its design features.

"Net Invoice Price" shall mean the gross selling price of each Covered Product sold by or for Licensee, less any of the following (but only insofar as they pertain to the sale of any such Covered Product by or for Licensee and are included in such Covered Product's gross selling price): (a) sales use or excise taxes paid directly or indirectly by Licensee; and (b) any shipping costs actually paid and separately itemized by Licensee. (c) normal and customary trade discounts, returns and allowances actually allowed thereon.

"Person" shall mean any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof).

2.    Grant of License.  Subject to the terms and conditions set forth in this Agreement, Licensor hereby grants to Licensee an exclusive license under the Intellectual Property Rights: (a) to market, offer for sale, sell and manufacture the Product: and (b) to use the Trademark in connection with the marketing and sale of the Product (the "License").  Licensee shall not have the right to grant sub-licenses under the License without prior written consent of Licensor.

3.    Royalties.

a.    Licensee shall pay Licensor semi-annually as described in Section 3(c) a royalty equal to eight percent (8%) of the Net Invoice Price for each Covered Product sold by or for Licensee and assembled, used, leased or sold anywhere in the world.

b.    The royalty described in subparagraph 3(a) of this Agreement shall accrue when the Licensee shall receive payment for the sale of a Covered Product. Receipt of payment for the sale of a Covered Product shall be deemed to upon the actual receipt of currently available funds for such sale by the Licensee.

c.    The accounting period for payment of royalties shall be on a calendar basis for the respective periods ending June 30 and December 31 of each year. Within 30 days of the end of each accounting period, Licensee shall furnish Licensor with

2

a written statement (certified as true and correct by an authorized officer of Licensee) of the total Net Invoice Price of all Covered Products sold in the preceding accounting period, setting forth the essential information concerning the sales by or for Licensee of all Covered Products subject to royalty and upon which royalty is calculated. Such information shall include such information as is reasonably necessary to enable Licensor to verify the accuracy of the royalty calculation. Payment of the royalties described in subparagraph 3(a) of this Agreement shall be due on a monthly basis and shall be payable on the tenth (10th) day of the month following the month of accrual of said royalties. The licensee shall include with each payment the written statement required to be furnished by Licensee pursuant to the terms of this Section 3(c).

     d.    Licensee agrees that it will at all times keep complete, true and correct books of account containing a current record of sales and other data in sufficient detail to enable the royalties payable under this Agreement to be computed and verified. Licensee further agrees to permit Licensor, its duly authorized agent or an independent certified or other public accountant selected by Licensor at the sole expense of the Licensor to have access for inspection and/or to make copies of such books of account at reasonable intervals during Licensee's normal business hours. The cost of any such audit shall be borne by Licensor. In the event that any audit of Licensee's books of account results in a determination that Licensee has paid less than the amount required under this Agreement, Licensee shall immediately pay the additional amount due.

     4.    <u>Relationship Between the Parties</u>. Licensor and Licensee are both independent contractors and not joint ventures with, or partner, agents or employees of, each other and neither Licensee nor Licensor shall in any respect by act or omission represent or imply, or permit any representation or implication by the act of omission of any other Person, that it is a joint venturer with, or the partner, agent or employee of, the other or in any respect authorized or empowered to act on behalf of the other, except as specifically provided under the terms of this Agreement.

     5.    <u>Representations and Warranties</u>. Licensee and Licensor each represent and warrant to each other that: (a) it is a corporation, partnership, sole proprietorship or limited liability company as described in the preamble to this agreement duly organized, validly existing and in good standing under the laws of the state of its incorporation, organization or formation; (b) it has the necessary power and authority to execute, deliver and perform its obligations under this Agreement, and all such action has been duly and validly authorized by all necessary proceedings on its part; and (c) this Agreement has been duly executed and delivered by it and constitutes the legal, valid and binding obligation of it enforceable against it in accordance with its terms. Licensor also represents and warrants to Licensee that to the best of Licensor's actual knowledge, the

3

Product does not infringe the patent, trademark or copyright rights of any Person. Further the Licensor to the best of its knowledge warrants and represents to the Licensee that:

    (i) Licensor is the sole owner of the Intellectual Property Rights related to and necessary for the Production and marketing of the Product.

    (ii) Licensor has the full power and authority to make this Agreement and to grant hereunder, and has not previously assigned, transferred or otherwise encumbered the same.

    (iii) The Intellectual Property Rights of the Product are not in the public domain.

    (iv) The Product does not infringe any statutory or common law Intellectual Property Right of a party other than the Licensor.

    (a)  Licensee will indemnify and hold Licensor harmless from any loss, costs or damages, including reasonable attorneys' fees, in connection with any claim, action or proceeding inconsistent with, or arising out of breach or alleged breach of, Licensee's warranties, representations and agreements contained in this Agreement. The Licensor may also defend any such claim, action or proceeding. Licensor shall have the right to participate in the defense at Licensor's own expense with counsel of Licensor's own choosing. Any settlement of a claim, action or proceeding as to which this indemnity applies shall be subject to Licensor's approval, not to be withheld unreasonably.

    (b)  The warranties, representations and indemnity by Licensor and Licensee herein shall survive termination of this Agreement for any reason.

    (c)  Licensee shall, at its own cost and expense, take such legal action, in Licensor's name if necessary, as may be required to restrain any infringement of any of the Intellectual Property Rights of the Licensor related to the Product or to seek damages therefor, but shall not be, liable to Licensor for failure to take such legal steps. If Licensor elects to join in such proceeding the expenses and recovery shall be shared equally. If Licensee proceeds without Licensor's participation, any recovery shall belong to Licensee. If Licensee does not bring such action, Licensor may do so in Licensor's own name and at Licensor's own cost and expense and money damages recovered by Licensor for any infringement shall belong to Licensor.

    (d)  Licensee may, in its reasonable discretion, withhold its reasonable estimate of the total damages and expenses (including reasonable attorneys' fees) from sums otherwise payable to Licensor pursuant to this or any other agreement between Licensor and Licensee, and to apply such sums to payment of such damages (including but not

4

limited to lost profits of the Licensee) and expenses. Notwithstanding the foregoing, in the event that Licensee shall have been notified of a claim or demand, if said claim or demand shall not result in a suit or proceeding within one year of notice to Licensee, and Licensee shall have incurred no costs, Licensee shall release the withheld funds, except that (i) Licensee may continue to withhold said funds if Licensor has a reasonable basis to believe that a suit or proceeding shall be commenced within a reasonable time thereafter, and (ii) Licensee may again commence withholding funds should a suit or proceeding be commenced after any release of withheld funds.

6. Duration and Termination.

a. Unless otherwise terminated as hereinafter set forth, this Agreement and License granted in this Agreement shall continue in force until two (2) years after December 31 of the year of the last publication or catalog in which the Product is included, provided however, that the term of this Agreement and the License granted hereunder shall automatically renew and extend for additional one-year periods unless and until either party shall have provided the other party with at least 12 months' written notice of its intention to terminate this Agreement as of the end of the current term.

b. Notwithstanding anything to the contrary contained in this Agreement, if Licensee shall at any time default in rendering any of the statements required under this Agreement, in paying any monies due under this Agreement, or in fulfilling any of the other obligations of this Agreement, and such default shall not be cured within 30 days after notice thereof is given by Licensor to Licensee, Licensor shall have the right immediately to terminate this Agreement by giving notice of termination to Licensee, such termination being effective upon Licensee's receipt of such notice. Licensee shall have the right to cure any such default up to, but not after, the giving of such notice of termination.

c. Except as provided in paragraph 6 (a) this Agreement, upon the occurrence of any of the following events, either party shall have the right immediately to terminate this Agreement by giving written notice of termination to the other party, such termination being effective upon such party's receipt of such notice and subject to paragraph 6 (a) of this Agreement: (i) the dissolution or liquidation of such party; (ii) the insolvency or bankruptcy of such party, whether voluntary or involuntary, or (iii) the death of an individual Licensor.

d. The waiver of any default under this Agreement by either party shall not constitute a waiver of the right to terminate this Agreement for any subsequent or like default, and the exercise of the right of termination shall not impose any liability by

reason of termination nor have the effect of waiving any damages to which such party might otherwise be entitled.

      e.     The termination of this Agreement for any cause outlined in this paragraph 6 shall in no manner interfere with, affect or prevent the collection by Licensor of any and all sums of money due to it under this Agreement.

      7.     <u>Duties Upon Termination</u>.  Upon termination of this Agreement pursuant to paragraph 6 of the Agreement, Licensee immediately shall:  (a) discontinue any and all use of trademarks (including, without limitation, the Trademark), trade names or marks owned or controlled by Licensor or any colorable imitation therefore; (b) refrain from doing anything which would indicate that Licensee is associated or working with Licensor; (c) refrain from marketing the Product or any other Product which infringes on any of the Patent Rights; and (d) return to Licensor all proprietary and confidential material provided to Licensee pursuant to the terms of this Agreement, including all copies, records and representations thereof.  Notwithstanding the foregoing sentence, Licensee shall have the right to dispose of any inventory of Covered Products existing on the date of termination, in the regular course of its business, and for this purpose the restrictions of (a), (b) and (c) of the foregoing sentence shall be deferred until six (6) months after the date of termination.

      8.     <u>Ownership of Intellectual Property Rights</u>.  Licensee hereby acknowledges and agrees that Licensor is the sole and exclusive owner of the Intellectual Property rights, and that nothing contained in this Agreement shall be construed to convey any right or proprietary interest in the Intellectual Property to Licensee, other than the License granted in this Agreement.

      9.     <u>Negation of Warranty</u>.  Except as expressly provided in paragraph 5 of this Agreement, no representation or warranty has been or is made by Licensor that the Product or parts thereof may be manufactured, used or sold free of patent rights or proprietary rights of other Persons; it being understood that Licensor shall not be liable for any loss, damage or expense arising from any claim for patent or other proprietary right infringement upon the manufacture, use, lease or sale of the Product or the exercise of the License under this Agreement.

      10.     <u>Compliance with Laws</u>.  Licensor and Licensee shall, during the term of this Agreement including any extension thereof, comply fully with all laws applicable to their respective obligations and activities under this Agreement.

      11.     <u>Entire Agreement: Amendment</u>.  This Agreement constitutes the entire and final agreement between the parties to this Agreement with respect to the subject matter

of this Agreement. This Agreement supersedes, in all respects, all other prior written or oral agreements between the parties to this Agreement relating to the subject matter of this Agreement. Neither this Agreement nor any of the provisions hereof can be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

12.    Severability.  If any clause or provision of this Agreement is determined to be illegal, invalid or unenforceable under any present or future law by the final judgment of a court of competent jurisdiction, the remainder of this Agreement will not be affected thereby. It is the intention of the parties to this Agreement that if any such provision is held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible and be legal, valid and enforceable.

13.    Construction.  Paragraphs or other headings contained in this Agreement are intended for ease in reference and are not intended to affect the meaning or interpretation of this Agreement. This Agreement may be executed in several counterparts, each of which will be deemed as original document, but all of which will constitute a single document.

14.    Notices.  Any notice, payment, demand or communication required or permitted to be given by any provision of this Agreement shall be in writing and shall be deemed to have been given when delivered personally, nationally recognized express delivery service or by facsimile, receipt confirmed, to the party designated to receive such notice or on the date after the same is sent by certified mail, express delivery service, postage and charges prepaid, directed to the following addresses or to such other or additional address or to such other or additional address as any party might designate by written notice to the other parties:

If to Licensee:                          If to Licensor:
Childcraft Education Corp.               Alice's Home: Tools for Teachers
2920 Old Tree Drive                     2784 Shady Ridge Drive
Lancaster, PA  17603                    Columbus, OH  43231
Attn:  Ronald Suchodolski               Attn:  William E. Wedd
FAX:  (717) 397-7586                    FAX:  (614) 882-1879

15.    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of Licensor, its successors and assigns. This Agreement shall be binding upon and inure to the benefit of Licensee, but shall not be transferable or assignable by Licensee to any person or entity without the written consent of Licensor.

16.    Governing Law.  This Agreement shall be governed by and construed, interpreted and enforced in accordance with the laws of Delaware.  Any disputes arising out of, in connection with or with respect to this Agreement, the subject matter hereof, the performance or non-performance of any obligation hereunder, or any of the transactions contemplated hereby shall be adjudicated in a court of competent civil jurisdiction sitting in the City of Wilmington, Delaware and nowhere else.  Each of the parties hereto hereby irrevocably submits to the jurisdiction of such court for the purposes of any suit, civil action or other proceeding arising out of, in connection with or with respect to this Agreement, the subject matter hereof, the performance or non-performance of any obligation hereunder, or any of the transactions contemplated hereby (collectively, "Suit").  Each of the parties hereto hereby waives and agrees not to assert by way of motion, as a defense or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum, or that the venue of such Suit is improper.

IN WITNESS WHEREOF, Licensor and Licensee have duly executed this Agreement on the day and year first above written.

ALICE'S HOME:  TOOLS FOR TEACHERS

By: _____ 4/6/98
William E. Wedd

CHILDCRAFT EDUCATION CORP.

By: _____ 4/13/98
Ronald Suchodolski
President

8



ALICE - ORIGINAL

E. 1774



**Alice's Home**  |  Tools for Teachers | ™

2784 Shady Ridge Drive
Columbus, OH 43231
(614) 882-1879
Fax (614) 898-9094

## CHILDCRAFT EDUCATION CORP. EXCLUSIVES
## 1997 SCHOOL CATALOG

**EXCLUSIVITY:** We are requesting information on the items listed below which are featured in Childcraft Education Corp.'s 1997 School Catalog. Terms of exclusivity include:

**CODE A.    EXCLUSIVE PRODUCTS UNDER CHILDCRAFT LABEL:** Products manufactured exclusively for Childcraft by other manufacturers/vendors and labeled with the Childcraft name.

**CODE B.    EXCLUSIVE PRODUCTS NOT BEARING CHILDCRAFT LABEL** but manufactured by a vendor who has given Childcraft the exclusive right to be the "sole source" of the product. This right is typically supported by this signed agreement between the vendor and Childcraft, and may include exclusivity with respect to all or to part of the product, such as its color, size, shape, and/or function.

**CODE C.    EXCLUSIVE COLLECTIONS:** Sets of products whose components may be individually bought on the open market, but selected or assembled by Childcraft into sets that may include, but not be limited to:

　　　　a. assortments not elsewhere available as a collection, and/or
　　　　b. functional packaging intended for a specific educational purpose (i.e.
　　　　size and dimensions of the collections as contained in specifically configured
　　　　containers to fit within or adjacent to another product.)

Please sign this page (or respond in writing if items are not exclusive to Childcraft) and return **AS SOON AS POSSIBLE** to Carol Falcone at the fax number below.

Thank you for your prompt response to this request.

| Product Description | Childcraft Item # | Vendor Item # | Exclusivity Code | Exclusive Through |
|---|---|---|---|---|
| Extra Wide Lang Easel w/chalkboard on one side, wipe-on/wipe-off on other side, plus shelf | A116 | B | | Perpetuity |

This letter is to confirm exclusivity of the vendor's product(s) listed created for Childcraft Education Corp. If possible, please provide us with this letter of exclusivity on your letterhead.

Vendor: _Alice's Home_    Address _2784 Shady Ridge Dr_
_Columbus OH 43231_
Signature(Name & Title) _William E Wedd_    _OWNER_

Print Name: _William E WEDD_    Phone# _614 882 1879_

Date: _SEPTEMBER, 16 1996_    Fax# _614 882 1879_

**Alice's Home**  |  Tools for Teachers |

| Post-it® Fax Note | 7671 | Date 9/16/96 | # of pages ▸ |
|---|---|---|---|
| To _Carol Falcone_ | | From | |
| Co./Dept. _CEC_ | | Co _Alice's Home_ | |
| Phone # | | Phone # | |
| Fax # | | Fax # | |

SEP-03-1996  16:14        CHILDCRAFT EDUCATION CORP        717 397 7586   P.02/05

| | | |
|---|---|---|
| **Attn:** | Carol Falcone | **Please send product samples to:** |
| **Phone:** | 717-391-4050 | **Liz Scott** |
| **Fax:** | 717-397-7586 | **2920 Old Tree Drive, Lancaster, PA 17603** |

**SECTION #1    VENDOR INFORMATION**
Vendor Name: Alice's Home                Phone: 614-882-1879   FAX: 614 882 1879
Address: 2784 Shady Ridge Dr.   Columbus OH 43231
Rep. Name: Bill Wedd or Alice Wedd   Phone: 614 882 1879   FAX: 614 882 1879
Purchase Order Mailing Add.: 2784 Shady Ridge Dr  Columbus OH 43231

**SECTION #2  PRODUCT INFORMATION**
(Please attach additional product literature, sell sheets, etc. applicable for catalog copy.)  A117 - 1st - 2nd grades
Item Name: EXTRA WIDE LANGUAGE EASEL   Style # A116- PREK+K   New Product? YES X  NO___
Date Available: 10/1/96         Country of Origin: USA
Item Description: Language Easel designed for both child + teacher use
Material Made of: MAPLE ; porcelain /steel   Colors Available:   Age Appropriateness: PRE - 2
Item Polybagged/Boxed/Other: /          Master Pack: 1
Item Weight: 55 lbs          Item Dimensions: 53½ x 36 - A117 ; 47½ x 36   A116
Number of Components per Item? 1      Is Drop Ship Available? NO     Drop Ship Cost
Is Individual Item UPS-able? Yes X No ___ Childcraft Exclusive? (For definition of exclusivity, see reverse side.) Yes X No___
A116 only ✓
DOES ITEM COMPLY WITH ALL U.S. FEDERAL AND STATE-MANDATED & VOLUNTARY PRODUCT SAFETY STANDARDS?
YES____ NO____   PLEASE PROVIDE ORIGINAL MATERIAL DATA SAFETY SHEETS FOR EACH SAMPLE.

**SECTION #3 #    PRICING INFORMATION  GUARANTEED THROUGH NOVEMBER 30, 1997**
Wholesale Cost: 175.00  B8 I.11   Suggested Retail: 290.00   Is Retail Price Printed on Package? YES____  NO X
Volume Discount(s) Available?          At What Level?
Contact: B.ll or Alice Wedd          Phone No.: 614-882 1879
Minimum Order: 50          On Hand Supply:        Lead Time - Initial Order: 30-45 days

PRODUCT AVAILABILITY MUST BE GUARANTEED THROUGH  NOVEMBER 30, 1997.

In order for your product to be included in our Growing Years 1997 catalog, Sections 1, 2 and 3 must be fully
completed, including signature and date below. Also, please note that by signing this form you are guaranteeing
cost and availability of this product through November 30, 1997.

SIGNATURE: _William E. Wedd_   COMPANY: _ALICE'S HOME_
PRINT NAME: _WILLIAM E. WEDD_   TITLE: _PRESIDENT_
DATE: _9/5/96_

**INTERNAL USE ONLY**
Catalog Item No. _____ Vendor No. _____ Catalog _____ Page _____ Buyer Code _____
First Cost _____ Landed Cost _____ Retail Pricing _____
Selling as (circle)      SET HEADER COMPONENT          ASSEMBLY COMPONENT
Forecast _____ First Order Qty. _____ Truck Item? _____ Drop Ship Item? _____ % of Page _____
Comments: _____

SEP-03-1996  16:15    CHILDCRAFT EDUCF



The **(C)**

**Post-it® Fax Note**  7671  Date 9/5/96  # of pages ▶ 2

To CAROL FALCONE  From BILL WEDD
Co./Dept CHILDCRAFT  Co. ALICE'S HOME
Phone # 717-391-4050  Phone # 614-882-1879
Fax # 717-397-7586  Fax # 614-882-1879

## SUPPLIER PROFILE QUESTIONNAIRE

1. Your prompt return of the original copy of this form will be appreciated.  Submission of this form does not constitute approval of your firm as a Walt Disney Company Supplier  nor does it obligate The Walt Disney Company to solicit requests for quotation.
2. All questions must be answered.  If a question is not applicable to your firm's type of product or service, enter N/A for "Not Applicable," or check the appropriate box.

*(Please type or print clearly for reproduction purposes.)*

### ◆ IDENTIFICATION

F. I. D.

| COMPANY NAME ALICE'S HOME | 31-1072891 | DUNN AND BRADSTREET NO |
| MAILING ADDRESS 2784 SHADY RIDGE DR2 | CITY Columbus | STATE OH | ZIP (9 DIGIT) 43231 |
| PHYSICAL ADDRESS 2784 SHADY RIDGE DK | CITY Columbus | STATE OH | ZIP (9 DIGIT) 43231 |
| PHONE # 614 882 1879 | FAX # 614 882 1879 | # OF EMPLOYEES 1 | TOTAL SALES LAST FISCAL YEAR | YEAR BUSINESS ESTABLISHED 1992 |
| CONTACT PERSON BILL WEDD OR ALICE WEDD |

THIS FIRM IS A: ☐ DIVISION  ☐ SUBSIDIARY  ☐ AFFILIATE  ☐ CORPORATION  ☒ INDIVIDUAL (SOLE PROPRIETOR)  IF INCORPORATED, INDICATE WHICH STATE

FULL LEGAL NAME OF PARENT COMPANY  N/A

STREET ADDRESS OF PARENT COMPANY (MANDATORY)  NA  CITY  STATE  ZIP (9 DIGIT)

### ◆ BUSINESS CLASSIFICATION

THIS FIRM IS A: ☒ MANUFACTURER  ☐ DEALER  ☐ WHOLESALE DISTRIBUTOR  ☐ BROKER
☐ SERVICE  ☐ CONTRACTOR  (☐ UNION / ☐ NON-UNION)

FACILITY SIZE (In Sq. Ft.)  MAXIMUM OPERATING RADIUS (In Miles)  MAXIMUM CURRENT BONDING LEVEL (If Applicable)

### ◆ CAPABILITIES   List Product(s) and/or Service(s) Offered and Special Capabilities.

Extra Wide Language Easel
Toothbrush House
Housekeeping Stand
Innovative Designs In Early Childhood Products And
Early Literacy Products

### ◆ PRINCIPAL OFFICIALS / STOCK OWNERSHIP   Please list your companies principal officials and stockholders (Ownership must total 100%)

| FULL NAME | OFFICIAL CAPACITY | % OWNERSHIP | RACE | GENDER | FAMILY RELATIONSHIP (IF ANY) |
| William Edwin Wedd | President | 100% | Caucasian | M | |

### ◆ OWNERSHIP   CHECK ALL APPLICABLE BOXES

COMPANY IS AT LEAST 51% OWNED, CONTROLLED, AND ACTIVELY MANAGED BY:
IF MINORITY OWNED, CHECK  ☐ MINORITY PERSON(S)  ☐ WOMAN/WOMEN
☐ ASIAN PACIFIC AMERICAN (INCLUDES ORIENTAL)  ☐ ASIAN INDIAN AMERICAN (INCLUDES INDIA, PAKISTAN, AND BANGLADESH)
☐ BLACK AMERICAN  ☐ HISPANIC AMERICAN
☐ NATIVE AMERICAN (INCLUDES AMERICAN INDIAN, AMERICAN ESKIMO, AMERICAN ALEUT, AND NATIVE HAWAIIAN)

### ◆ SIZE INFORMATION   PLEASE CHECK APPROPRATE BOX (CHECK ONLY ONE)   Please refer to the opposite side of this page for business "TYPE" definitions.

☐ FOREIGN OWNED BUSINESS CONCERN  ☐ MINORITY-OWNED BUSINESS CONCERN  ☐ WOMEN-OWNED BUSINESS CONCERN
(REFER TO DEFINITION 6)  (REFER TO DEFINITION 3)  (REFER TO DEFINITION 4)
☒ SMALL BUSINESS CONCERN  ☐ NON-PROFIT BUSINESS CONCERN  ☐ LARGE BUSINESS CONCERN
(REFER TO DEFINITION 2)  (REFER TO DEFINITION 5)  (REFER TO DEFINITION 1)

### ◆ MISCELLANEOUS

HAVE YOU EVER SUPPLIED PRODUCTS/SERVICES TO THE WALT DISNEY COMPANY?  ☐ YES  ☒ NO  IF YES, CHECK LOCATION(S) BELOW:
☐ CHILDCRAFT  ☐ DISNEYLAND  ☐ WALT DISNEY WORLD  ☐ WALT DISNEY STUDIOS  ☐ KCAL-TV  ☐ DISNEY STORES
☐ DISNEY DEVELOPMENT CO. / WALT DISNEY IMAGINEERING  ☐ OTHER (PLEASE SPECIFY)

YOUR DISNEY CONTACT(S):  _____  PHONE: _____
_____  PHONE: _____

### LIST CURRENT MBE/WBE CERTIFICATIONS GRANTED (PLEASE ATTACH PHOTOCOPIES )

CERTIFIED BY:  *(NOTE: THE WALT DISNEY COMPANY REQUIRES CERTIFICATION OF MBEs BY THE NATIONAL MINORITY SUPPLIER DEVELOPMENT COUNCIL OR AN AFFILATE COUNCIL)*  EXPIRATION DATE:

### THE ABOVE INFORMATION IS CERTIFIED TO BE TRUE TO THE BEST OF MY KNOWLEDGE.

SIGNATURE OF PRESIDENT OR CEO  William C. Wedd  TITLE PRESIDENT  DATE 9/5/96

*Childcraft Original*

LICENSE AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement"), is made and entered into on June 30, 1997, by and between ALICE'S HOME: TOOLS FOR TEACHERS, [a] Corporation (or limited liability company, partnership, etc) duly organized and existing under and by virtue of the laws of the State of _____, whose address is _____ _____ ("Licensor"), and CHILDCRAFT EDUCATION CORP., a New York Corporation duly organized and existing under and by virtue of the laws of the State of New York, whose address is 2920 Old Tree Drive, Lancaster, PA 17603 (" Licensee" ).

BACKGROUND

Licensor is the owner of all rights, titles and interests in and to the Extra Wide Language Easel which is depicted in Exhibit "A" to this Agreement (the "Product"). Licensee desires to obtain an exclusive license under the Intellectual Property Rights to market, offer for sale, sell and manufacture the Product. For the purpose of this Agreement the term "Intellectual Property Rights" shall mean any rights which the Licensor shall have related to any United States or foreign patent to which the Licensor has title as of the date of this Agreement, as well as any application for a United States or foreign patent made by the Licensor or rights for which an application could be made related to the Product (the "Patent Rights") or any United States or foreign copyright owned by the Licensor as of the date of this Agreement, including any registration of copyrights, in the United States Copyright Office or the equivalent thereof in any foreign county, as well as any application for a United States or foreign copyright registration made by the Licensor related to the Product as well as any trademarks registered in the United States Patent and Trademark Office or the equivalent thereof in any state of the United States or in any foreign country, and (ii) all of the unregistered Trademarks, that the Licensor now owns or uses in connection with the Product ("Trademark"). Subject to and in accordance with the terms of this Agreement, Licensor is willing to grant such license.

PROVISIONS

Therefore, in exchange for the covenants, rights, and duties as herein described, the adequacy of which is acknowledged by all parties hereto, Licensor and Licensee agree as follows:

1.    Certain Definitions. In addition to other terms defined elsewhere in this Agreement, the following terms shall have the following meanings, respectively (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"Covered Product" shall mean the Product and any other product (regardless of the dimensions of such other product) designed, marketed, offered for sale, sold, assembled or manufactured by Licensee which is substantially similar to the Product in its design features.

"Net Invoice Price" shall mean the gross selling price of each Covered Product sold by or for Licensee, less any of the following (but only insofar as they pertain to the sale of any such Covered Product by or for Licensee and are included in such Covered Product's gross selling price): (a) sales use or excise taxes paid directly or indirectly by Licensee; (b) any shipping costs actually paid and separately itemized by Licensee; and (c) normal and customary trade discounts, returns and allowances actually allowed thereon.

"Person" shall mean any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof).

    2.    <u>Grant of License</u>. Subject to the terms and conditions set forth in this Agreement, Licensor hereby grants to Licensee an exclusive license under the Intellectual Property Rights: (a) to market, offer for sale, sell and manufacture the Product: and (b) to use the Trademark in connection with the marketing and sale of the Product (the "License"). Licensee shall not have the right to grant sub-licenses under the License without prior written consent of Licensor, which consent shall not be unreasonably withheld or delayed.

    3.    <u>Royalties</u>.

        a.    Licensee shall pay Licensor semi-annually as described in Section 3(c) a royalty equal to eight percent (8%) of the Net Invoice Price for each Covered Product sold by or for Licensee and assembled, used, leased or resold anywhere in the world.

        b.    The royalty described in subparagraph 3(a) of this Agreement shall accrue when the Licensee shall receive payment for the sale of a Covered Product. Receipt of payment for the sale of a Covered Product shall be deemed to upon the actual receipt of currently available funds for such sale by the Licensee.

        c.    The accounting period for payment of royalties shall be on a calendar basis for the respective periods ending June 30 and December 31 of each year. Within 30 days of the end of each accounting period, Licensee shall furnish Licensor with

a written statement (certified as true and correct by an authorized officer of Licensee) of the total Net Invoice Price of all Covered Products sold in the preceding accounting period, setting forth the essential information concerning the sales by or for Licensee of all Covered Products subject to royalty and upon which royalty is calculated. Such information shall include such information as is reasonably necessary to enable Licensor to verify the accuracy of the royalty calculation. Payment of the royalties described in subparagraph 3(a) of this Agreement shall be due on a monthly basis and shall be payable on the tenth (10th) day of the month following the month of accrual of said royalties. The licensee shall include with each payment the written statement required to be furnished by Licensee pursuant to the terms of this Section 3(c).

      d.     Licensee agrees that it will at all times keep complete, true and correct books of account containing a current record of sales and other data in sufficient detail to enable the royalties payable under this Agreement to be computed and verified. Licensee further agrees to permit Licensor, its duly authorized agent or an independent certified public accountant selected by Licensor at the sole expense of the Licensor to have access for inspection and/or to make copies of such books of account at reasonable intervals during Licensee's normal business hours. The cost of any such audit shall be borne by Licensor. In the event that any audit of Licensee's books of account results in a determination that Licensee has paid less than the amount required under this Agreement, Licensee shall immediately pay the additional amount due.

      4.    <u>Relationship Between the Parties</u>. Licensor and Licensee are both independent contractors and not joint ventures with, or partner, agents or employees of, each other and neither Licensee nor Licensor shall in any respect by act or omission represent or imply, or permit any representation or implication by the act of omission of any other Person, that it is a joint venturer with, or the partner, agent or employee of, the other or in any respect authorized or empowered to act on behalf of the other, except as specifically provided under the terms of this Agreement.

      5.    <u>Representations and Warranties</u>. Licensee and Licensor each represent and warrant to each other that: (a) it is a corporation, partnership or limited liability company as described in the preamble to this agreement duly organized, validly existing and in good standing under the laws of the state of its incorporation, organization or formation; (b) it has the necessary power and authority to execute, deliver and perform its obligations under this Agreement, and all such action has been duly and validly authorized by all necessary proceedings on its part; and (c) this Agreement has been duly executed and delivered by it and constitutes the legal, valid and binding obligation of it enforceable against it in accordance with its terms. Licensor also represents and warrants to Licensee that to the best of Licensor's actual knowledge, the Product does not infringe the patent, trademark or copyright rights of any Person. Further the Licensor warrants and represents to the Licensee that:

Licensee, and to apply such sums to payment of such damages (including but not limited to lost profits of the Licensee) and expenses. Notwithstanding the foregoing, in the event that Licensee shall have been notified of a claim or demand, if said claim or demand shall not result in a suit or proceeding within one year of notice to Licensee, and Licensee shall have incurred no costs therefore Licensee shall release the withheld funds, except that (i) Licensee may in its sole discretion continue to withhold said funds if Licensor has a reasonable basis to believe that a suit or proceeding shall be commenced within a reasonable time thereafter, and (ii)  Licensee may again commence withholding funds should a suit or proceeding be commenced after any release of withheld funds.

6.    Duration and Termination.

a.    Unless otherwise terminated as hereinafter set forth, this Agreement and License granted in this Agreement shall continue in force until November 30, 1999, provided, however, that the term of this Agreement and the License granted hereunder shall automatically renew and extend for additional one-year periods unless and until either party shall have provided the other party with at least 12 months' written notice of its intentions to terminate this Agreement as of the end of the current term.

b.    Notwithstanding anything to the contrary contained in this Agreement, if Licensee shall at any time default in rendering any of the statements required under this Agreement, in paying any monies due under this Agreement, or in fulfilling any of the other obligations of the Agreement, and such default shall not be cured within 30 days after notice thereof is given by Licensor to Licensee, Licensor shall have the right immediately to terminate this Agreement by giving notice of termination to Licensee, such termination being effective upon Licensee's receipt of such notice. Licensee shall have the right to cure any such default up to, but not after, the giving of such notice of termination.

c.    Notwithstanding anything to the contrary contained in this Agreement, upon the occurrence of any of the following events, either party shall have the right immediately to terminate this Agreement by giving notice of termination to the other party, such termination being effective upon such party's receipt of such notice:  (i) the dissolution or liquidation of such party; (ii)  the insolvency or bankruptcy of such party, whether voluntary or involuntary, or (iii) the death of an individual Licensor.

d.    The waiver of any default under this Agreement by either party shall not constitute a waiver of the right to terminate this Agreement for any subsequent or like default, and the exercise of the right  of termination shall not impose any liability by reason of termination nor have the effect of waiving any damages to which such party might otherwise be entitled.

e.    The termination of this Agreement for any cause outlined in this paragraph 6 shall in no manner interfere with, affect or prevent the collection by Licensor of any and all sums of money due to it under this Agreement.

7.    Duties Upon Termination.  Upon termination of the Agreement pursuant to paragraph 6 of the Agreement, Licensee immediately shall:  (a) discontinue any and all use of trademarks (including, without limitation, the Trademark), trade names or marks owned or controlled by Licensor or any colorable imitation therefore; (b) refrain from doing anything which would indicate that Licensee is associated or working with Licensor; (c) refrain from marketing the Product or any other Product which infringes on any of the Patent Rights; and (d) return to Licensor all proprietary and confidential materials provided to Licensee pursuant to the terms of this Agreement, including all copies, records and representations thereof.  Notwithstanding the foregoing sentence, Licensee shall have the right to dispose of any inventory of Covered Products existing on the date of termination, in the regular course of its business, and for this purpose the restrictions of (a), (b) and (c) of the foregoing sentence shall be deferred until six (6) months after the date of termination.

8.    Ownership of Intellectual Property Rights.  Licensee hereby acknowledges and agrees that Licensor is the sole and exclusive owner of the Intellectual Property Rights, and that nothing contained in this Agreement shall be construed to convey any right or proprietary interest in the Intellectual Property to Licensee, other than the License granted in this Agreement.

9.    Negation of Warranty.  Except as expressly provided in paragraph 5 of this Agreement, no representation or warranty has been or is made by Licensor that the Product or parts thereof may be manufactured, used or sold free of patent rights or proprietary rights of other Persons; it being understood that Licensor shall not be liable for any loss, damage or expense arising from any claim for patent or other proprietary right infringement upon the manufacture, use, lease or sale of the Product or the exercise of the License under this Agreement.

10.    Compliance with Laws.  Licensor and Licensee shall, during the term of this Agreement including any extension thereof, comply fully with all laws applicable to their respective obligations and activities under this Agreement.

11.    Entire Agreement:  Amendment.  This Agreement constitutes the entire and final agreement between the parties to this Agreement with respect to the subject matter of this Agreement.  This Agreement supersedes, in all respects, all other prior written or oral agreements between the parties to this Agreement relating to the subject matter of this Agreement.  Neither this Agreement nor any of the provisions hereof can be changed,

waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

12.    Severability.  If any clause or provision of this Agreement is determined to be illegal, invalid or unenforceable under any present or future law by the final judgment of a court of competent jurisdiction, the remainder of this Agreement will not be affected thereby.  It is the intention of the parties to this Agreement that if any such provision is held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible and be legal, valid and enforceable.

13.    Construction.  Paragraphs or other headings contained in this Agreement are intended for ease in reference and are not intended to affect the meaning or interpretation of this Agreement.  This Agreement may be executed in several counterparts, each of which will be deemed as original document, but all of which will constitute a single document.

14.    Notices.  Any notice, payment, demand or communication required or permitted to be given by any provision of this Agreement shall be in writing and shall be deemed to have been given when delivered personally, nationally recognized express delivery service or by facsimile, receipt confirmed, to the party designated to receive such notice or on the date after the same is sent by certified mail, express  delivery service, postage and charges prepaid, directed to the following addresses or to such other or additional addresses as any party might designate by written notice to the other parties:

|  |  |
|---|---|
| If to Licensee: | If to Licensor: |
| Childcraft Education Corp. | Alice's Home: Tools for Teachers |
| 2920 Old Tree Drive | 2784 Shady Ridge Drive |
| Lancaster, PA  17603 | Columbus, OH  43231 |
| Attn:  Ronald Suchodolski | Attn:  Alice Wedd |
| FAX:  (717) 397-7586 | FAX:  (614) 898-9094 |

15.    Successors and Assigns.  This Agreement shall be binding upon an inure to the benefit of Licensor, its successors and assigns.  This Agreement shall be binding upon and inure to the benefit of Licensee, but shall not be transferable or assignable by Licensee, or inure to the benefit of any successor or assign of Licensee, without the prior written consent of Licensor.  Notwithstanding the foregoing sentence, Licensee may, without the consent of Licensor, transfer or assign all of its rights under this Agreement to any purchaser of all or substantially all of Licensee's assets.

16.    Governing Law.  This Agreement shall be governed by and construed, interpreted and enforced in accordance with the laws of Delaware.  Any disputes arising out

(i)  Licensor is the sole owner of the Intellectual Property Rights related to and necessary for the Production and marketing of the Product.

(ii)  Licensor has the full power and authority to make this Agreement and to grant the rights granted hereunder, and has not previously assigned, transferred or otherwise encumbered the same.

(iii)  The Intellectual Property Rights of the Product is not in the public domain.

(iv)  The Product does not infringe any statutory or common law Intellectual Property Right of a party other than the Licensor.

(v)  The Product is not potentially injurious to the user.

(a)    Licensor will indemnify and hold Licensee harmless from any loss, costs or damages, including reasonable attorneys' fees, in connection with any claim, action or proceeding inconsistent with, or arising out of breach or alleged breach of, Licensor's warranties, representations and agreements contained in this Agreement. The Licensee may defend any such claim, action or proceeding. Licensor shall have the right to participate in the defense at Licensor's own expense with counsel of Licensor's own choosing. Any settlement of a claim, action or proceeding as to which this indemnity applies shall be subject to Licensor's approval, not to be withheld unreasonably. *and Licensee*

(b)    The warranties, representations and indemnity by Licensor herein shall survive termination of this Agreement for any reason.

(c)    Licensee may, at its own cost and expense, take such legal action, in Licensor's name if necessary, as may be required to restrain any infringement of any of the Intellectual Property Rights of the Licensor related to the Product or to seek damages Therefor, but shall not be, liable to Licensor for failure to take such legal steps. If Licensor elects to join in such proceeding the expenses and recovery shall be shared equally. If Licensee proceeds without Licensor's participation, any recovery shall belong to Licensee. If Licensee does not bring such action, Licensor may do so in Licensor's own name and at Licensor's own cost and expense and money damages recovered by Licensor for any infringement shall belong to Licensor, except that any money damages recovered on account of the loss of Licensee's profits shall be divided equally between Licensor and Licensee.

(d)    Licensee shall have the right to withhold its reasonable estimate of the total damages and expenses (including reasonable attorneys' fees) from sums otherwise payable to Licensor pursuant to this or any other agreement between Licensor and

of, in connection with or with respect to this Agreement, the subject matter hereof, the performance or non-performance of any obligation hereunder, or any of the transactions contemplated hereby shall be adjudicated in a court of competent civil jurisdiction sitting in the City of Wilmington, Delaware and nowhere else. Each of the parties hereto hereby irrevocably submits to the jurisdiction of such court for the purposes of any suit, civil action or other proceeding arising out of, in connection with or with respect to this Agreement, the subject matter hereof, the performance or non-performance of any obligation hereunder, or any of the transactions contemplated hereby (collectively, "Suit"). Each of the parties hereto hereby waives and agrees not to assert by way of motion, as a defense or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum, or that the venue of such Suit is improper.

IN WITNESS WHEREOF, Licensor and Licensee have duly executed this Agreement on the day and year first above written.

ALICE'S HOME:  TOOLS FOR TEACHERS

By: _____
      Alice Wedd


CHILDCRAFT EDUCATION CORP.

By: _____
      Ronald Suchodolski
      President