IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHILDCRAFT EDUCATION CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-461-GMS |
| ALICE'S HOME and WILLIAM WEDD, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY**

MORRIS, NICHOLS, ARSHT & TUNNELL
S. Mark Hurd (#3297)
Jerry C. Harris (#4262)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  Attorneys for Defendants

OF COUNSEL:

James P. Connors
Law Offices of James P. Connors
221 South High Street
Columbus, OH 43215

October 21, 2005

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                         iii

NATURE AND STAGE OF THE PROCEEDING                                          1

SUMMARY OF ARGUMENT                                                         2

STATEMENT OF FACTS                                                          3

ARGUMENT                                                                    8

I.    THE COMPLAINT SHOULD BE DISMISSED FOR
      LACK OF PERSONAL JURISDICTION AND
      IMPROPER VENUE.                                                       8

II.   THE COMPLAINT SHOULD BE DISMISSED FOR
      FAILURE TO STATE A CLAIM UPON WHICH RELIEF
      CAN BE GRANTED.                                                      12

      A.    Childcraft Fails To State A Claim Against Alice's
            Home And Mr. Wedd Under The Licensing
            Agreement.                                                     12

      B.    Count Two Fails To State A Claim Under The
            Delaware Uniform Trade Secrets Act Because
            Delaware Law Is Not Applicable To The Claim.                   14

      C.    Count Three Fails To State A Claim And Is
            Superceded By The Misappropriation Of Trade
            Secrets Claim.                                                 14

III.  THE COMPLAINT SHOULD BE DISMISSED
      PURSUANT TO RULES 12(B)(7) AND 19.                                   16

      A.    Ms. Wedd Is A Necessary Party.                                 16

      B.    "In Equity and Good Conscience" This Action
            Should Not Proceed In The Absence of Ms. Wedd.                 17

IV.   THE COURT SHOULD STAY THIS ACTION IN
      FAVOR OF A PRIOR-FILED ACTION PENDING IN
      STATE COURT IN OHIO.                                                 21

      A.    The Ohio Action and this Delaware Action are
            Parallel.                                                      21

ii.

B.    Abstention is Warranted in This Case.                                    23

    1.    Inconvenience of the Federal Forum.                              24

    2.    Avoidance of Piecemeal Litigation.                               25

    3.    Order In Which Jurisdiction Was Obtained.                        26

    4.    Presence of a *Res* or Property.                                 26

    5.    Rule of Decision on the Merits.                                  26

    6.    Adequacy of the State Court Proceeding to
          Protect Plaintiff's Rights.                                      27

    7.    Identity of Issues.                                              27

    8.    Federal Policy Militating in Favor or
          Against the Stay.                                                27

    9.    Important Countervailing Federal Interest
          Which Federal Courts Are More Likely to
          Respect.                                                        28

CONCLUSION                                                                29

iii.

TABLE OF CITATIONS

<u>Cases</u>                                                                                                      <u>Page</u>

*Angst v. Royal MacCabees Life Ins. Co.,*
    77 F.3d 701 (3d Cir. 1996)                                                  16

*Carnival Cruise Lines, Inc. v. Schute,*
    499 U.S. 585 (1991)                                                             8

*Colorado River Conservation Dist. v. United States*,
    424 U.S. 800 (1976)                                                        passim

*Dentsply Int'l, Inc. v. Benton*,
    965 F. Supp. 574 (M.D. Pa. 1997)                                         8

*Easds v. Woodsmen of the World Life Ins. Soc.*,
    785 P.2d 328 (Okla. App. 1989)                                          11

*Falcon Tankers, Inc. v. Litton Sys., Inc.*,
    300 A.2d 231 (Del. Super. Ct. 1972)                                      9

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
    539 A.2d 1060 (Del. 1988)                                               14

*Gardiner v. Virgin Islands Water & Power Auth.*,
    145 F.3d 635 (3d Cir. 1998)                                             18

*Gilbane Bldg Co. v. Nemours Foundation*,
    568 F. Supp. 1085 (D. Del. 1983)                                 21, 24, 26

*Harleysville Mut. Ins. Co. v. Grzbowski*,
    2002 WL 1859193 (Del. Super. Aug. 9, 2002)                         22

*ID Biomed. Corp. v. TM Tech., Inc.*,
    1995 WL 130743 (Del. Ch. Mar. 16, 1995)                            14

*Jelich v. Warner Brothers, Inc.*,
    1996 WL 209973 (S.D.N.Y. 1996)                                      11

*Jumara v. State Farm Inc. Co.*,
    55 F.3d 873 (3d Cir. 1995)                                               8

*Jurimex Kommerz Transit GMBH v. Case Corp.*,
    201 F.R.D. 337 (D. Del. 2001)                                     17, 18, 19

iv.

*Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*,
    1997 WL 529587 (Del. Super. Jan. 29, 1997)      15

*Kreider v. Schumacher & Co.*,
    816 F. Supp. 957 (D. Del. 1993)      9

*Little Switzerland, Inc. v. Destination Retail Holdings Corp.*,
    1999 WL 223496 (D. Del. Mar. 31, 1999)      16

*Maloney v. Gordon*,
    328 F. Supp. 2d 508 (D. Del. 2004)      21

*Mobilificio San Giacomo S.P.A. v. Stoffi*,
    1998 WL 125534 (D. Del. 1998)      8

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997)      12

*Moses H. Cone Hospital v. Mercury Construction Corp.*,
    *460 U.S. 1 (1982)*      23, 25, 26, 27

*Nelson v. Master Lease Corp.*,
    759 F. Supp. 1397 (D. Minn. 1991)      11

*New Beckley Mining Corp v. Int'l Union, UMWA*,
    946 F.2d 1072 (4th Cir. 1991), *cert. denied,* 503 U.S. 971 (1992)      22, 23

*Pelleport Investors, Inc. v. Budco Quality Theaters, Inc*,
    741 F.2d 273 (9th Cir. 1984)      9

*Preferred Capital, Inc. v Sarasota Kemnel Club*,
    2005 WL 1799900 (N.D. Ohio July 27, 2005)      9

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968)      19

*Pursuit Athletic Footwear, Inc. v. Save Power Ltd.*,
    *1996 WL 328596 (D. Del. June 7, 1996)*      1

*Savor, Inc. v. RMA Corp.*,
    812 A.2d 894 (Del. 2002)      15

*Sea Colony Inc. v. Alcan Aluminum Corp.*,
    653 F. Supp. 1323 (D. Del. 1987)      passim

*Simm Assocs, Inc. v. PNC Nat'l Bank*,
    1998 WL 961764 (Del. Super. Oct. 8, 1998)      9

v.

*Tell v. Trustees of Dartmouth College,*
    145 F.3d 417 (1st Cir. 1998)                    19

*The Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972)                                8

*Weiper v. W.A. Hill Assoc,*
    661 N.E.2d 796 (Ohio App. 1995)                 15

*Wood v. Coastal States Gas Corp.,*
    401 A.2d 932 (Del. 1979)                        15

<u>Statutes and Other Authorities</u>

6 Del. C. § 2003                                    15

Fed. R. Civ. P. 41                                   1

Fed.R.Civ.P. 19                           16, 17, 18, 19

## NATURE AND STAGE OF THE PROCEEDING

On May 16, 2005, Alice Wedd and Alice's Home commenced an action against Childcraft Education Corp. ("Plaintiff" or "Childcraft") and James Green in the Court of Common Pleas, in Franklin County, Ohio, asserting several state law claims against the defendants in that action.[1]

Over six weeks later, on July 1, 2005, Childcraft commenced an action in this Court against Ms. Wedd, Alice's Home and William Wedd. D.I. 1.

On August 30, 2005, plaintiffs in the Ohio action filed an amended complaint.

On September 9, 2005, defendants filed a motion to dismiss for lack of jurisdiction over the person or, in the alternative, to stay and an opening brief in support thereof. D.I. 15 & 16.

On September 28, 2005, Childcraft filed a notice of voluntary dismissal of Alice Wedd as a defendant in this action pursuant to Fed. R. Civ. P. 41(a)(1)(i). D.I. 20.

On October 6, 2005, Childcraft filed an amended complaint (the "Amended Complaint" or "Am. Compl."). D.I. 21.

Defendants filed a motion to dismiss the Amended Complaint, or in the alternative, to stay this action. This is Defendants' opening brief in support of that motion.

---

[1]    The Court may take judicial notice of the pleadings filed in the Ohio lawsuit, copies of which are attached as Exhibits A-C. *See Pursuit Athletic Footwear, Inc. v. Save Power Ltd., 1996 WL 328596*, at *10 n.2 (D. Del. June 7, 1996) (taking judicial notice of complaint filed in Texas state court).

2.

## SUMMARY OF ARGUMENT

1.    Apart from an unreasonable and unenforceable forum selection clause, Plaintiff has failed to allege any facts that would make jurisdiction or venue in Delaware appropriate. The case should be dismissed or, alternatively, stayed pending a resolution of the Ohio action.

2.    The amended Complaint fails to state a claim upon which relief can be granted. Count One, which purports to assert a claim for breach of contract, fails to allege anything more than bald assertions and legal conclusions that Alice's Home has breached a purported duty to Plaintiff with respect to the A116 Extra Wide Language Easel, the sole product covered by the License Agreement, and therefore the Amended Complaint fails to state a claim for breach. Plaintiff similarly fails to make the well-pleaded allegations sufficient to state claims for misappropriation of trade secrets or unjust enrichment.

3.    Alice Wedd is not subject to the jurisdiction of this Court. She is, however, a necessary and indispensable party with respect to the claims asserted in the Complaint. Accordingly, this action should be dismissed pursuant to Rules 12(b)(7) and 19.

4.    The Court should stay further proceedings in this action on abstention grounds as the state law claims belatedly asserted in this Court were previously asserted in Ohio state court, where all of the parties are subject to personal jurisdiction and the law of which governs the parties' disputes.

STATEMENT OF FACTS

Plaintiff is a New York corporation which has its principal place of business in Lancaster, Pennsylvania. Am. Compl. ¶ 1. Defendant Alice's Home is a sole proprietorship located in Columbus, Ohio. *Id.* ¶ 2. Defendant William Wedd is also an Ohio resident who resides in Columbus. *Id.* ¶ 3. The recently dismissed defendant Alice Wedd is a pre-school teacher who has lived and worked her entire life in Ohio. *Id.* ¶ 4; Alice Wedd Aff. ¶¶ 2-3.[2]

Following her graduation from college, Ms. Wedd worked as a teacher and child care director. Alice Wedd Aff. ¶¶ 2-3. Ms. Wedd then went into educational product sales to public and private schools in Ohio. *Id.* ¶ 3. In 1992 by Ms. Wedd and her husband (defendant William Wedd) started "Alice's Home" to design, manufacture, and market Ms. Wedd's early childhood product designs. Beginning in 1992, Alice's Home designed and marketed other versions of the Extra Wide Language Easel including but not limited to models A100, A101, A103, A104, A105, A106, A108, A109, A110, A165, A175, A150, A153, and A154. These other easel models have different dimensions, sizes, shapes, features, and none has a shelf as does the A116. *Id.* ¶ 9. The manufacturer invoices for the easels manufactured for Alice's Home customers from 1998 to the present are attached to the Affidavit of William E. Wedd II as Exhibits D-K. William E. Wedd Aff. II ¶ 7.

---

[2]     The August 29, 2005 Affidavit of Alice J. Wedd, filed in the Court of Common Pleas, Franklin County, Ohio, was previously filed with the Court and is cited herein as "Alice Wedd Aff. ¶ ___." D.I. 18. The September 9, 2005 Affidavit of William E. Wedd is cited as "William Wedd Aff. I ¶ __." D.I. 17. The October 19, 2005 Affidavit of William E. Wedd, filed herewith, is cited as "William Wedd Aff. II ¶ __."

4.

In 1995, Ms. Wedd started work for Childcraft, a company with revenues exceeding $100 million annually and its own manufacturing subsidiary. In July 1996, Ms. Wedd presented Alice's Home products to Childcraft at its request for inclusion in its 1997 Childcraft School Catalog. Childcraft requested an "exclusive" easel product. Ms. Wedd suggested the A116, an easel which she designed specifically for Childcraft. Alice Wedd Aff. ¶ 10.

In October 1996, at the Childcraft national sales meeting in Lancaster, Pennsylvania, Ms. Wedd presented, at Childcraft's request, the background of Alice's Home, the theory behind the extra wide language easel, and the features and benefits of the A116 easel. Present at that meeting were the entire Childcraft management staff, the company officers, the director of manufacturing, and the entire company sales force. *Id.* ¶ 11.

In 1997, Alice's Home retained a small company called B+D Woodshack, located in Joliet, Illinois to manufacture A116 easels for Childcraft through purchase orders from Childcraft. *Id.* ¶ 12.

By about April 1998, Childcraft was well aware of the numerous Extra Wide Language Easels models because Ms. Wedd discussed them with Childcraft management and sales personnel. *Id.* ¶ 9.

Childcraft asked Ms. Wedd if it would manufacture the A116 under a license agreement. *Id.* ¶ 13. Ms. Wedd negotiated a License Agreement with Childcraft management for an Alice's Home product known as the A116 "Extra Wide Language Easel with a Shelf," which is attached and depicted in Exhibit A to the agreement. *Id.* ¶ 5. Ms. Wedd designed and developed this product specifically for Childcraft. The

5.

License Agreement did not pertain to any other products and expressly noted this. *Id.*
Indeed, Childcraft acknowledges that the License Agreement pertained only to the A116
in its Amended Complaint. *See* Am. Compl. ¶ 10.

As noted, prior to executing the License Agreement, Alice's Home
manufactured the A116 easel for Childcraft. *Id.* ¶ 6. Alice's Home signed a document
provided by Childcraft stating at Childcraft's request that Childcraft had an "exclusive"
product in the A116. A copy of that License Agreement for 1997 is attached to the Alice
Wedd Affidavit. *Id.* ¶ 6.

The exclusivity arrangement changed when Childcraft advised Ms. Wedd
that it wanted a License Agreement for the A116 effective April 1, 1998. *Id.* ¶ 7. In
1997, Childcraft prepared, drafted and submitted a draft contract to Ms. Wedd for her
signature. *Id.* All negotiations and discussions relative to this agreement took place in
Ohio. *Id.* ¶ 8. During the negotiations, Ms. Wedd, who was not represented by counsel,
asked about the paragraph concerning where a lawsuit would be filed in the event of a
dispute with Childcraft, and Childcraft president Ronald Suchadolski told her that it was
a "formality" and was necessary simply because "that is where business lawsuits are
filed." Alice Wedd Aff. ¶ 18.

The License Agreement lists Alice Wedd as signing on behalf of Alice's
Home. Her husband William Wedd, however, owned the company and signed the
License Agreement on behalf of Alice's Home. The only parties to the License
Agreement, therefore, are Alice's Home and Childcraft.

6.

The License Agreement was executed, in part, to acknowledge Alice's Home's property rights and to allow Childcraft to manufacture, market, and distribute only the A116 easel and no other products including any other easels.[3] *Id.* ¶ 14.

Neither Ms. Wedd nor Alice's Home has entered any other agreements with Childcraft regarding any products other than the A1116 easel. *Id.* ¶ 16. There is no connection or relationship whatsoever between Ms. Wedd, Alice's Home, William Wedd, and the State of Delaware. None of the defendants conducts business in or with Delaware, nor derives revenue from Delaware of which they are aware, nor has caused any injury in Delaware. *Id.* ¶ 17; William Wedd Aff. I ¶ 21.

On May 16, 2003, Childcraft terminated Ms. Wedd.

On May 16, 2005, Ms. Wedd commenced an action in Ohio state court against Childcraft.

On July 1, 2005 Childcraft brought this action in Delaware alleging claims arising out of Ms. Wedd's former employment with Childcraft and premising venue on a forum selection clause in the Licensing Agreement.

The only connection that Childcraft alleges between this action and the State of Delaware is a forum selection clause contained in a License Agreement. It would be extraordinarily burdensome for the defendants to litigate this action in Delaware. Defendants lack the resources to conduct litigation on two fronts and pay

---

[3]     Childcraft requested design changes to the A116 in late 1998 or early 1999 and called Ms. Wedd for approval of these changes, which she provided. Childcraft shipped her a product to review prior to the approved changes being made. Childcraft has never contacted Ms. Wedd regarding other changes or different products or designs for other products, nor has she approved any. Alice Wedd Aff. ¶ 15.

7.

separate attorneys in both cases.    Unlike Plaintiff, a corporation with substantial resources, neither defendant has the financial resources necessary to litigate this action in a distant forum remote from the witnesses and evidence necessary for trial of this case. Alice Wedd Aff. ¶ 1[9]; William Wedd Aff. I ¶ 22.

8.

## ARGUMENT

I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE.

The License Agreement's forum selection clause is unreasonable and venue is therefore improper.[4]   The sole basis alleged in the Complaint for venue in Delaware is paragraph 16 of the License Agreement.  Am. Compl. ¶ 5.  Forum selection clauses are generally upheld unless they are shown to be unreasonable.  *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585 (1991).[5]   This general rule is not absolute.   In the Third Circuit, a forum selection clause may be disregarded when "enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable," *Mobilificio San Giacomo S.P.A. v. Stoffi*, 1998 WL 125534, at *5 (D. Del. 1998) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd*, 709 F.2d 190, 201 (3d Cir. 1983)).  Similarly, where there is "such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court" a forum selection clause may be disregarded.  *Simm Assocs, Inc. v. PNC Nat'l Bank*, 1998 WL

---

[4]   Plaintiff has conceded that there is no personal jurisdiction over Alice Wedd by dismissing her from this case, and premises its claims for personal jurisdiction over the remaining defendants solely upon the License Agreement's forum selection clause, notwithstanding the absence of minimum contacts with Delaware by either defendant and notwithstanding the fact that Plaintiff itself is not a citizen of this State.

[5]   In the Third Circuit, the validity of a forum selection clause in a diversity action is a matter of federal law, not state law."  *Jumara v. State Farm Inc. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Mobilificio San Giacomo S.P.A. v. Stoffi*, 1998 WL 125534, at *5 (D. Del. 1998); *Dentsply Int'l, Inc. v. Benton*, 965 F. Supp. 574, 577 (M.D. Pa. 1997).

9.

961764, at *3 (Del. Super. Oct. 8, 1998) (quoting *Pelleport Investors, Inc. v. Budco Quality Theaters, Inc*, 741 F.2d 273 (9th Cir. 1984)). This is such a case.

In assessing whether a forum selection clause is unreasonable, courts have looked to "(1) which law controls the contractual dispute: (2) what residency do the parties maintain; (3) where the contract was executed; (4) where are the witnesses and parties to the litigation located; and (5) whether the forum's designated location is inconvenient to the parties." *Preferred Capital, Inc. v Sarasota Kemnel Club*, 2005 WL 1799900, at *4 (N.D. Ohio July 27, 2005).

Litigation in Delaware is unreasonable under these factors. Delaware law may control Childcraft's claim for breach of contract based on the choice of law provision in the License Agreement,[6] but the association with Delaware ends there. Childcraft's misappropriation of trade secrets and unjust enrichment claims are not controlled by the choice of law provision, and therefore are not governed by Delaware law. Childcraft is a New York corporation with a principal place of business in Pennsylvania and doing business in Ohio. All of the defendants are Ohio residents. The contract was negotiated between Ms. Wedd and her employer in Ohio and was executed in Ohio. All of the alleged conduct occurred in Ohio, where most, if not all, of the witnesses are located. While a Delaware forum may not be inconvenient to Childcraft, a company with over $100 million in annual revenues, it is inconvenient to the defendants:

---

[6]     Defendants do not concede that Delaware law applies to the breach of contact claim as the relationship between the parties has no connection to Delaware and the License Agreement's choice of law provision is therefore unenforceable. *See Kreider v. Schumacher & Co.*, 816 F. Supp. 957, 960 (D. Del. 1993); *Falcon Tankers, Inc. v. Litton Sys., Inc.*, 300 A.2d 231, 235 (Del. Super. Ct. 1972) (choice of law provision is enforceable only if the selected jurisdiction "has a material connection with" the transaction).

an individual and a sole proprietorship that does business out of a home. *See* Alice Wedd Aff. ¶¶ 17, 1[9]; William Wedd Aff. I ¶¶ 21-22.

The *only* nexus between this case and Delaware is that Alice's Home has a License Agreement with Childcraft providing that Delaware law purportedly governs interpretation and enforcement of the License Agreement and by which Alice's Home consented to jurisdiction for actions "arising out of" or "in connection with" the License Agreement after being told it was a mere formality.[7]  Childcraft is not incorporated in Delaware, does not have a principal place of business in Delaware, and does not contend that this action arises out of any actions in Delaware.  Alice's Home is an unincorporated sole proprietorship owned by William Wedd and operated from his home in Columbus, Ohio.  Defendants lack the financial resources necessary to litigate this action in Delaware and litigating this action in Delaware may effectively deprive them of a meaningful day in court.  Alice Wedd Aff ¶ 1[9]; William Wedd Aff. I ¶ 22.

Simply put, the only connection between this action and Delaware is that Alice's Home -- not William Wedd in his individual capacity and certainly not Alice Wedd -- consented to jurisdiction in Delaware for disputes arising out of or in connection with the License Agreement.   Neither defendant has any other connections with Delaware, there is related litigation pending in Ohio, and the defendants do not have the financial ability to defend themselves in a distant forum.  Courts have declined to enforce forum selection clauses negotiated between an employee and an employer and when the

---

[7]     Count One is the only claim that "arises out of" or "is in connection with" the License Agreement.  The remaining counts for misappropriation of trade secrets and for unjust enrichment relate to conduct that allegedly arose out of Ms Wedd's actions, who Plaintiff tacitly concedes is not within this Court's jurisdiction, as an employee of Childcraft.

11.

employee does not have the financial ability to litigate in the forum specified in the forum selection clause.  *See Jelich v. Warner Brothers, Inc.*, 1996 WL 209973 (S.D.N.Y. 1996); *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991); *Easds v. Woodsmen of the World Life Ins. Soc.*, 785 P.2d 328, 331 (Okla. App. 1989).  This Court should do the same in this case.

II.    THE COMPLAINT SHOULD BE DISMISSED FOR
       FAILURE TO STATE A CLAIM UPON WHICH RELIEF
       CAN BE GRANTED.

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the well pled allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. *E.g., Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A Court need not, however, credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. "[W]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Id.*

A.    Childcraft Fails To State A Claim Against Alice's
      Home And Mr. Wedd Under The Licensing
      Agreement.

Count One attempts to allege a breach of contract against Alice's Home and William Wedd under the Licensing Agreement by marketing, offering for sale, selling and manufacturing the A116 Extra Wide Language Easel. Am. Compl. ¶ 18.

In its original complaint, Childcraft failed to indicate which product formed the basis for its breach of contract claim. In its Amended Complaint, Childcraft now concedes, as it must, that the A116 is the only exclusive product covered by the Licensing Agreement (Am. Compl. ¶ 10) but goes on to merely make a bald assertion, without any factual support, that defendants breached the Licensing Agreement by "marketing, offering for sale, selling and manufacturing the Extra Wide Language Easel, Model A116."

Childcraft's recognition and use of the use of the term A116 in its Amended Complaint is not insignificant. The Licensing Agreement relates *only to the*

13.

*"Extra Wide Language Easel" depicted in Exhibit A of the Licensing Agreement.* Alice's Home markets (and always has marketed) many different models of "Extra Wide Language Easels" with different dimensions, sizes and shapes. Alice's Home retained the right to market, offer for sale, sell and manufacture other models of the "Extra Wide Language Easel" under the License Agreement and has continued to do since execution of the License Agreement. *See* William E. Wedd Affidavit II, ¶¶ 2-7, Exs. A-K. The original and Amended Complaint both fail to allege any facts supporting the bald assertion that there has been a breach of the License Agreement, and Childcraft acknowledges that the License Agreement continues in force and that it continues to pay royalties to Alice's Home. The Amended Complaint's allegations are not only conclusory and internally inconsistent, but they are also without evidentiary support because Alice's Home has not marketed, offered for sale, sold, or manufactured the A116 at any time from 1998 to the present. William E. Wedd Aff. II ¶¶ 2-7, Exs. A-K. Count One, therefore, fails to state a claim upon which relief can be granted against either Alice's Home or William Wedd.

Because the remainder of the claims do not "arise out of" the License Agreement, there is no basis for jurisdiction or venue in this Court. The entire action should therefore be dismissed because the breach of the License Agreement claim is the only claim supporting jurisdiction and venue. Alternatively, this action should be stayed pending a decision on the merits in the Ohio action to determine whether a present justiciable controversy exists with respect to the License Agreement.

B.    Count Two Fails To State A Claim Under The
Delaware Uniform Trade Secrets Act Because
Delaware Law Is Not Applicable To The Claim.

Count Two alleges a claim for Misappropriation of Trade Secrets under Delaware statutory law for allegedly misappropriating Childcraft's customer lists and pricing information which Ms. Wedd purportedly obtained as an employee of Childcraft. *See* Am. Compl. ¶¶ 14-16, 22.  Misappropriation of trade secrets is a statutory cause of action and does not "arise out of and is not "in connection with" the License Agreement. If anything, it arises out purported conduct of Ms. Wedd as an employee of Childcraft in Ohio.  *See* Am. Compl. ¶¶ 14, 16.  Therefore, the choice of law and consent to jurisdiction provisions are inapplicable to Count Two.  Childcraft has no basis under which it can bring this action under Delaware law without the application of these terms of the License Agreement, Childcraft therefore fails to state a claim under the Delaware Uniform Trade Secrets Act.

C.    Count Three Fails To State A Claim And Is
Superceded By The Misappropriation Of Trade
Secrets Claim.

Count Three alleges that the defendants have been unjustly enriched by their alleged wrongful actions.  "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *ID Biomed. Corp. v. TM Tech., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).  "[C]ourts developed unjust enrichment, or quasi-contract, as a theory of recovery to remedy the absence of a formal contract."  *ID Biomed.*, 1995 WL 130743, at *15; *Kirkwood Kin Corp. v. Dunkin'*

*Donuts, Inc.*, 1997 WL 529587, at \*17 (Del. Super. Jan. 29, 1997). "[A] party cannot seek recovery under an unjust enrichment theory if a contract is the measure of the plaintiffs right." *Id.*; *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979); *Resource Venture, Inc. v. Res. Management Int'l, Inc.*, 42 F. Supp. 2d 423, 429 (D. Del. 1999); *Weiper v. W.A. Hill Assoc*, 661 N.E.2d 796, 804 (Ohio App. 1995). Here, Childcraft admittedly has a contractual relationship with Alice's Home – Albeit a limited one. Childcraft may not also seek recovery for unjust enrichment under a quasi-contractual theory in addition to the rights that are delineated in the License Agreement with Alice's Home.

In addition, Count Three arises out of the same underlying conduct as Childcraft's misappropriation of trade secrets claim, and to the extent that the Delaware Uniform Trade Secrets Act were applicable as Plaintiff argues, common law claims arising out of the same alleged conduct are displaced and not permitted. *See Savor, Inc. v. RMA Corp.*, 812 A.2d 894, 898 (Del. 2002) ("The Uniform Trade Secrets Act displaces conflicting tort, restitutionary and other laws of this State providing civil remedies for misappropriation of a trade secret. Savors common law claims seek civil remedies based solely on the alleged misappropriation of a trade secret. Thus, the Superior Court correctly ruled that Savors common law claims are precluded.") Indeed, unjust enrichment is a measure of damages under the Delaware Uniform Trade Secrets Act. *See* 6 Del. C. § 2003(a).

16.

III.   THE   COMPLAINT   SHOULD   BE   DISMISSED
PURSUANT TO RULES 12(B)(7) AND 19.

Under Rule 19, the Court engages in a two-step inquiry.  First, the Court

must determine if the party is a "person to be joined if feasible" under Rule 19(a) If the

party is "necessary" under Rule 19(a), and if joinder of the party is not feasible, the Court

must determine whether "in equity and good conscience the action should proceed among

the parties before it, or be dismissed" by considering the factors set forth in Rule 19(b).

*See, e.g.*, *Little Switzerland, Inc. v. Destination Retail Holdings Corp.*, 1999 WL 223496,

at *3 (D. Del. Mar. 31, 1999).

A.   Ms. Wedd Is A Necessary Party.

In determining whether a party is "necessary" under Rule 19(a), courts

evaluate whether:

> (1) in the person's absence complete relief cannot be
> accorded among those already parties, or (2) the person
> claims an interest relating to the subject matter of the action
> and is so situated that the disposition of the action in the
> person's absence may (i) as a practical matter impair or
> impede that person's ability to protect that interest or (ii)
> leave any of the persons already parties subject to a
> substantial risk of incurring double, multiple, or otherwise
> inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a); *Angst v. Royal MacCabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir.

1996).  Rule 19(a) is written in the disjunctive and, if a party's absence results in any of

the identified situations, that party is deemed necessary.  Here, Ms. Wedd is clearly

"necessary" under Rule 19(a).

In its original complaint, Childcraft recognized that Ms. Wedd is a

necesssary party to this litigation and named her as a defendant even though there was no

basis for asserting personal jurisdiciton over her in Delaware.  That joinder of Ms. Wedd

is required by Rule 19(a) is evident from the relief requested (which is requested against each of the defendants in entirely similar fashion) and the three counts for relief.  As shown in Count Three of the original Complaint, for an alleged breach of fiduciary duty of the employee duty of loyalty asserted against only Ms. Wedd, it is clear that she is a necessary party.  Plaintiff originally alleged that Ms. Wedd disclosed Childcraft's trade secrets (identified only as "customer lists and pricing information") to the other two defendants, and that those two defendants knew or had reason to know that the alleged trade secrets were acquired by improper means.  Compl. ¶¶ 10, 17, 19-20.  Following this alleged wrongdoing, Plaintiff purportedly learned that Alice's Home and William Wedd were selling and manufacturing extra wide easels in supposed breach of the License Agreement (Count One), all of which caused each of the defendants to be unjustly enriched (Count Three).  A central element to each of Plaintiff's claims is the alleged conduct of Ms. Wedd, a former employee of plaintiff who allegedly obtained trade secrets through her employment,  with whom Plaintiff interacted -- and which evidences the conclusion that she is a necessary party.  *See Jurimex Kommerz Transit GMBH v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001) ("the Subsidiaries are necessary parties under Rule 19(a) because Plaintiffs' interactions were almost entirely with the Subsidiaries").

    B. "In Equity and Good Conscience" This Action
      <u>Should Not Proceed In The Absence of Ms. Wedd.</u>

    Not only is Ms. Wedd necessary under Rule 19(a), but in equity and good conscience this action should not proceed against the remaining defendants in her absence.  Under Rule 19(b), the Court considers:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Here, the Rule 19(b) factors favor dismissal.

As the Third Circuit has explained, "[t]he first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis." *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 641 n.4 (3d Cir. 1998). A judgment in favor of Plaintiff in the absence of Ms. Wedd would encourage piecemeal litigation requiring Plaintiff to re-litigate the same (and additional) issues in an action by Ms. Wedd. As a practical matter, however, her ability to litigate these claims may be negatively impacted by any declaration in favor of Plaintiff. As such, the first factor weighs in favor of dismissal. *See Jurimex*, 201 F.R.D. at 340 ("A judgment against Defendant would undoubtedly prejudice the Subsidiaries, whose conduct is largely at issue in this case."). Nor are there any apparent ways in which protective provisions in the judgment or other measures (the second factor under Rule 19(b)) can lessen or avoid the prejudice. Because Plaintiff seeks, among other things, to impose liability for misappropriation against all of the defendants, based apparently upon Ms. Wedd's conduct as an employee, it will not be possible to lessen or avoid the prejudice to Ms. Wedd of a ruling in favor of Plaintiff. Accordingly, the first two Rule 19 factors, prejudice to the absent or remaining parties and the ability to craft an order to lessen any prejudice, each favor dismissal. *See id.* at 340-41 (judgment in absence of subsidiaries would not be adequate because plaintiffs could sue them in another jurisdiction based on "essentially the same facts" and a

19.

judgment for the plaintiffs would "be 'hollow' because the proper defendant was never joined.").

The third and fourth Rule 19(b) factors similarly favor dismissal. The Supreme Court has explained that the third factor, whether a judgment rendered in the person's absence will be adequate, refers to the "public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). Here, a judgment rendered in the absence of Ms. Wedd will not be adequate because "without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party." *Tell v. Trustees of Dartmouth College*, 145 F.3d 417 (1st Cir. 1998).

Here, Ms. Wedd and William Wedd are estranged, and Plaintiff alleges that William Wedd and Alice's Home received purportedly confidential information from Ms. Wedd, all of which may affect the manner in which Ms. Wedd litigates issues *vis a vis* the other defendants. The fourth factor, the availability of a remedy if the action is dismissed, clearly favors dismissal. Ms. Wedd, who is not subject to jurisdiction in Delaware, has commenced an action in Ohio against Plaintiff and against James Green, who also is subject to jurisdiction in Ohio but not Delaware Alice's Home/William Wedd is also party to the Ohio action. Accordingly, Plaintiff has a remedy if the action is dismissed for nonjoinder. *See Jurimex*, 201 F.R.D. at 341 (noting that litigation could proceed with all necessary parties in Paris, France among other foreign forums and dismissing complaint under Rule 19(b)).

20.

In equity and good conscience, this action should be dismissed. The dismissal will not leave Plaintiff without a remedy as it is already party to a prior-filed action state court action in Ohio where each of the claims that are at issue here, and additional issues not included in the Complaint, can be conveniently and efficiently litigated.

IV.    THE COURT SHOULD STAY THIS ACTION IN FAVOR OF A PRIOR-FILED ACTION PENDING IN STATE COURT IN OHIO.

"[T]he power to stay or dismiss federal proceedings pending resolution of a State court action rests within the sound discretion of the trial court." *Sea Colony Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1326 (D. Del. 1987), citing *Harvey & Harvey v. Delaware Solid Waste Authority*, 600 F. Supp. 1369, 1377 (D. Del. 1985); *Gilbane Bldg Co. v. Nemours Foundation*, 568 F. Supp. 1085, 1089 (D. Del. 1983). This discretion stems from this Court's inherent power to control its docket. *Id.; see also Maloney v. Gordon*, 328 F. Supp. 2d 508, 511 (D. Del. 2004) citing *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 (1936). While the general rule is that the "pendency of a state court proceeding is not a reason for a federal court to decline to exercise jurisdiction established by Congress," *Sea Colony*, 653 F. Supp. at 1325, the United States Supreme Court has held that a federal court may appropriately stay a proceeding where (1) parallel state court proceedings exist and (2) exceptional circumstances make abstention appropriate. *See Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). This is such a case.

A.    The Ohio Action and this Delaware Action are Parallel.

A parallel proceeding does not necessarily require the claims be identical, but rather "substantially similar." *Id.* (citing *Guenveur v. State Farm Mutual Ins. Co.*, 551 F Supp. 1044, 1046 (D. Del. 1982)). Lawsuits are considered parallel if "substantially the same parties litigate substantially the same issues in different forums."[8] *New*

---

[8]    The inclusion of William Wedd as a named defendant in this Action does not
(Continued . . .)

*Beckley Mining Corp v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991), *cert. denied,* 503 U.S. 971 (1992).  The Delaware federal action and Ohio state action arise out of the same set of operative facts, and are largely mirror images of each other.  Both complaints include allegations of misappropriation of trade secrets, unjust enrichment, and breaches of contracts.

In the Ohio Action, plaintiff Alice's Home asserts claims against defendant Childcraft for misappropriation of trade secrets, breach of a license agreement, and unjust enrichment.[9]  *See* Ohio First Amend. Comp. ¶¶ 15-17, 25-39.  Similarly, in this Delaware Action, plaintiff has asserted claims against defendant, Alice's Home, for misappropriation of trade secrets, breach of a contract, and unjust enrichment.  *See* Compl. ¶¶ 21-31, 37-39.

In the Ohio Action, plaintiff, Alice Wedd, has asserted claims against Childcraft based on a breach of an employment agreement between them.  *See* Ohio First Amend. Comp. ¶¶ 21-24.  Likewise, in this Delaware Action, Childcraft originally asserted claims against Alice Wedd based on an alleged breach of duty arising out of the same employment relationship.  *See* Compl. ¶¶ 32-36.

———————————

(. . . continued)

affect the finding that the actions involve "substantially the same parties."  Alice's Home is a sole-proprietorship owned by William Wedd; therefore, any claim asserted by or against Alice's Home is de jure, a claim by or against William Wedd.  *See Harleysville Mut. Ins. Co. v. Grzbowski*, 2002 WL 1859193, at *2 (Del. Super. Aug. 9, 2002) (a sole proprietorship is not a distinct legal entity)  Additionally, William Wedd is effectively a party to the Ohio Action and subject to the personal jurisdiction of the Ohio courts.  *See* Amended Compl. ¶ 3 (William Wedd resides at 2784 Shady Ridge Drive, Columbus, Ohio 43231).

[9]     The Ohio Action also involves claims by Alice's Home against Childcraft based on unfair competition and interference with existing and prospective contractual relationships and slander.  *See* Ohio First Amend, Comp, ¶¶ 18-20, 34-37.

23.

Accordingly, because "substantially the same parties" are litigating "substantially the same issues in different forums," these cases are parallel. *See New Beckley Mining Corp*, 946 F.2d at 1073.

B.     Abstention is Warranted in This Case.

After establishing the parallel nature of the cases, "the party seeking the stay must 'carry the burden of demonstrating that adequate grounds exist to justify granting the stay.'" *Sea Colony*, 653 F. Supp. at 1326. The defendant must demonstrate either the existence of "exceptional circumstances" or "a clear case of hardship or inequity in being required to go forward" before the court will issue a stay. *Sea Colony*, 653 F. Supp. at 1326 (citing *Guenveur*, 551 F. Supp. at 1046 (noting *Colorado River*, 424 U.S. at 817-19)). As stated in *Moses H. Cone Hospital v. Mercury Construction Corp.*:

> The decision of whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case . . . .

460 U.S. 1, 16 (1982).

In *Colorado River*, the United States Supreme Court identified several factors federal courts should consider in determining whether exceptional circumstances exist in a particular case:  (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) the order in which the proceedings were initiated; and (4) the presence of a *res* or property over which jurisdiction has been asserted. *Sea Colony*, 653 F. Supp. at 1326 (citing *Harvey & Harvey v. Delaware Solid Waste Authority*, 600 F. Supp. 1369, 1375 (D. Del. 1985)). Two additional criteria were considered by the United States Supreme Court in *Moses H. Cone Hospital*: (5) whether federal law provides the rule of decision on the merits, 460 U.S. at 23, and (6) the

24.

adequacy of the state court proceedings to protect plaintiff's rights. *Id.* at 26; *Sea Colony*, 653 F. Supp. at 1326. Additionally, this Court has considered three additional factors: (7) the identity of the issues in the two forums; (8) the existence of a federal policy militating either in favor of or against the stay; and (9) the existence of an important countervailing federal interest which federal courts might be more likely than state courts to respect or enforce. *Id.* at 1326-27. The nine factors favor the Court exercising its discretion to order a stay in this case.

1.     Inconvenience of the Federal Forum.

In determining whether a federal forum is inconvenient to the parties, this Court must consider the relative ease of access to the sources of proof, the availability of compulsory process for attendance of unwilling witnesses, and the enforceability of a judgment if one is obtained. *Gilbane Bldg. Co. v. Nemours Foundation*, 568 F. Supp 1085, 1089 (D. Del. 1983); *see also Sea Colony*, 653 F. Supp. at 1327 (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Delaware is an inconvenient forum. A majority of the witnesses and proof necessary to litigate this action are located in Ohio, the home of defendant Alice's Home/William Wedd, and Alice Wedd. *See* Alice Wedd Aff. ¶¶ 17, 1[9]; William Wedd Aff. I ¶¶ 21-22. Any other necessary proof or witnesses would likely be found in Pennsylvania, the home of Childcraft. There will be no evidence or witnesses located in Delaware. More importantly, as discussed above, Ms. Wedd is not subject to this Court's jurisdiction. Clearly, this factor greatly militates in favor of abstention.

2.    Avoidance of Piecemeal Litigation.

The desirability of avoiding piecemeal litigation, referred to by the United States Supreme Court as the most important *Colorado River* factor, *see Sea Colony*, 653 F. Supp. at 1327 (citing *Moses H. Cone Hospital*, 460 U.S. at 16), favors abstention. As stated in *Sea Colony*, this court should analyze the possibility of satisfactory adjudication in the state forum, the joinder of necessary parties, and whether parties are amenable to process. *Sea Colony*, 653 F. Supp. at 1327 (citing *Brillhart v. Excess Ins. Co*, 316 U.S. 491, 495 (1942)).

With respect to the satisfactory adjudication in the state forum, the issues in the state and federal proceedings are identical in that they depend on the application of state law precedent to issues concerning breaches of a license agreement, misappropriation of trade secrets, unjust enrichment and breaches of an employment contract. However, because these issues should be decided based on Ohio state law, the Ohio court may be a better arbiter of the underlying claims. This factor tips the scales toward abstention.

More importantly, and as more fully discussed above, Ms. Wedd cannot be joined as a necessary party, nor is she amenable to service of process. *See supra* Argument § III. Accordingly, this Delaware Action will invariably lead to "piecemeal" litigation with respect to all the claims asserted by and against Alice Wedd. This factor, accordingly, weighs heavily in favor of abstention. *See Moses H Cone Hospital*, 460 U.S. at 16.

3.    Order In Which Jurisdiction Was Obtained.

It is clear that the Ohio state court proceeding was initiated over six weeks before this Delaware federal action was filed.  "This [priority] factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand."  *Moses H Cone Hospital*, 460 U. S. at 21.  The defendants in Ohio have answered, extensive informal discovery has already proceeded, and this factor favors abstention or, at a minimum, is neutral.

4.    Presence of a *Res* or Property.

Neither the Ohio court nor this Court has asserted jurisdiction, or will be required to assert jurisdiction, over property in this proceeding.  This factor is neutral.

5.    Rule of Decision on the Merits.

The fifth factor to consider is whether state or federal law will supply the rule of decision.  *Sea Colony*, 653 F. Supp. at 1326.  All of the claims asserted in the Delaware Action are state law claims.  *See* Am. Compl. (Count One (Breach of Contract: Alice's Home/William Wedd); Count Two (Misappropriation of Trade Secrets); Count Three (Unjust Enrichment)).  Clearly, federal law will not supply the rule of decision for any of these state law claims.  This factor weighs in favor of abstention.  *See Gilbane*, 568 F. Supp. 1085, 1091 (D. Del. 1983) ("if the parallel state-court action is in [a state court and that state court is applying its own state law], then this factor would weigh in favor [of abstention].")[10]

---

[10]    The only claim that may not implicate Ohio state law is the Count One, the breach of the contract claim, although that claim will not involve the application of Delaware law. *See Falcon Tankers*, 300 A.2d at 235.

6.    Adequacy of the State Court Proceeding to
Protect Plaintiff's Rights.

The sixth factor relates to the ability of the state court to adequately protect plaintiffs rights. The Ohio state court can exercise jurisdiction over all the parties, but this Court cannot. As such, there is no question that the Ohio Court can effectively protect all the parties' rights. *Cf. Moses H Come Hospital*, 460 U.S. at 26. This factor weighs in favor of abstention.

7.    Identity of Issues.

The state and federal court proceedings are parallel and at least "substantially similar." *See Sea Colony*, 653 F. Supp. at 1329. All the claims that have been asserted in this Delaware Action are also before the Ohio state court. *Compare* Am. Compl. (Counts 1-3) *and* Ohio First Am. Compl. ¶¶ 15-17, 21-39 (Counts 1, 3, 4 and 6) (Each action contains a (i) misappropriation of trade secrets claim, (ii) a breach of a license agreement claim, (iii) an unjust enrichment claim, and (iv) a claim based on a breach of an employment contract.). This factor weighs in favor of abstention.

8.    Federal Policy Militating in Favor or
Against the Stay.

In *Sea Colony*, the court considered two federal policies which militated in favor of granting the stay judicial economy and comity between state and federal courts. *Sea Colony,* 653 F. Supp. at 1329. Just as in *Sea Colony*, judicial economy and comity militate in favor of this Court staying this Delaware Action. Because all of the issues before this Court are also before the Ohio state court, separate trials will undoubtedly result in the inefficient expenditure of valuable judicial resources. *Id.* Furthermore, a stay of this action will likely promote comity by removing the possibility of differing

28.

results in the two actions which could engender difficult problems in reaching an ultimate disposition of the issues involved both actions. *Id.* This factor favors abstention.

9.    Important Countervailing Federal Interest Which Federal Courts Are More Likely to Respect.

There is no federal interest present which a federal court is more likely to respect or enforce than the state court. The absence of this factor counsels in favor of granting the stay. *Id.* at 1329 (citing *Guenveur*, 551 F. Supp. at 1048).

There can be no argument as to the parallel nature of this Delaware Action and the Ohio Action. Additionally, the overwhelming majority of *Colorado River* factors militate in favor of abstention. Accordingly, this Court should exercise its inherent discretionary power to stay this action.

29.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, to stay this action should be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
S. Mark Hurd (#3297)
Jerry C. Harris (#4262)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
    Attorneys for Defendants

OF COUNSEL:

James P. Connors
Law Offices of James P. Connors
221 South High Street
Columbus, OH  43215

October 21, 2005

489191

<u>CERTIFICATE OF SERVICE</u>

I, Samuel T. Hirzel, hereby certify that on October 21st, 2005, I electronically filed DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY, which will send notification of such filing(s) to the following:

> Allen M. Terrell, Jr., Esq.
> Kelly E. Farnan, Esq.
> RICHARDS, LAYTON & FINGER
> One Rodney Square
> Wilmington, DE 19899

Samuel T. Hirzel, II (#4415)